1   MUNGER, TOLLES & OLSON LLP
    RONALD L. OLSON (State Bar No. 44597)
2   *Ron.Olson@mto.com*
    JOHN M. RAPPAPORT (State Bar No. 254459)
3   *John.Rappaport@mto.com*
    355 South Grand Avenue, Thirty-Fifth Floor
4   Los Angeles, CA 90071-1560
    Telephone: (213) 683-9100
5   Facsimile: (213) 687-3702

6   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
    BRAD S. KARP   *(Pro Hac Vice applications to be filed)*
7   *bkarp@paulweiss.com*
    THEODORE V. WELLS, JR.
8   *twells@paulweiss.com*
    LYNN B. BAYARD
9   *lbayard@paulweiss.com*
    1285 Avenue of the Americas
10  New York, NY 10019-6064
    Telephone: (212) 373-3000
11  Facsimile: (212) 757-3990

12  Attorneys for Defendants
    NATIONAL FOOTBALL LEAGUE
13  and NFL PROPERTIES LLC

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16  DAVE PEAR and HEIDI PEAR, his wife;       CASE NO. CV11-08395 GAF(PJWX)
    LEONARD MARSHALL and
17  MARYANN MARSHALL, his wife;               **NOTICE OF REMOVAL OF**
    BARRY FOSTER and TERAY FOSTER,            **CIVIL ACTION UNDER**
18  his wife; ERIC W. MARTIN and STACY        **28 U.S.C. § 1441**
    MARTIN, his wife; LANCE SMITH;
19  HENRY LAWRENCE; ROBERT SUCI
    and MERITA SUCI, his wife; DEEMS          **COMPLAINT FILED:**
20  MAY and SUSAN MAY, his wife;              Los Angeles Superior Court
    ZEFROSS MOSS; ANTONIO McGEE and           Case No. LC094453
21  SUE McGEE, his wife; JOHN L.              August 3, 2011
    OUTLAW and LINDA OUTLAW, his
22  wife; BERNARD FORD; JAMES
    VANWAGNER and KELLEY
23  VANWAGNER; BOBBY E. ABRAMS,
    JR., and STEPHANIE ABRAMS, his wife;
24  JOHNNY REMBERT; FRANCISCO
    CRAIG and DENISE CRAIG, his wife;
25  JAMES ELROD and MARLENE ELROD,
    his wife; FRED BARNETT and LINDSAY
26  BARNETT, his wife; KEITH
    HENDERSON; JAMES PRUITT;
27  WENDELL TYLER and CARMEN
    TYLER, his wife; HORACE COPELAND
28

15382558.2

and TANGELA COPELAND, his wife;
MICHAEL LUSH and DEBRA LUSH, his
wife; MICHAEL GANN and KAREN
GANN, his wife; TIMOTHY BARNETT
and CHELONDA BARNETT, his wife;
CALVIN WILLIAMS and CHARESE
WILLIAMS, his wife; DAVID SIMS;
FRED McCRAY and NERMA McCRAY,
his wife; ANTHONY MARSHALL; LEE
ROUSON and LISA ROUSON, his wife;
DANNY MILLER and LISA MILLER, his
wife; WADE KEY and CATHERINE
KEY, his wife; TONY DORSETT and
JANET DORSETT, his wife; EMANUEL
MARTIN; DWIGHT HARRISON;
HARRY CRUMP and ANDREA CRUMP,
his wife; SANTANA DOTSON and
MONIQUE DOTSON, his wife; STEFON
ADAMS and PATRICE ADAMS, his wife;
LORENZO HAMPTON and MARCIA
HAMPTON, his wife; LORENZO DAVIS;
EMANUEL KING and KENDRA KING,
his wife; WILLIE RICHARDSON and
EARLINE RICHARDSON, his wife;
MARC BOUTTE and TANANJALYN, his
wife; REGGIE MOORE; LIONAL
DALTON; BRODERICK THOMAS and
YVONNE THOMAS, his wife; MARTY
CARTER

                    Plaintiffs,

v.

NATIONAL FOOTBALL LEAGUE; NFL
PROPERTIES LLC; RIDDELL, INC. d/b/a
RIDDELL SPORTS GROUP, INC.; ALL
AMERICAN SPORTS CORPORATION,
d/b/a RIDDELL/ALL AMERICAN;
RIDDELL SPORTS GROUP, INC.;
EASTON-BELL SPORTS, INC.;
EASTON-BELL SPORTS, LLC; EB
SPORTS CORP.; and RBG HOLDINGS
CORP., and JOHN DOES 1 through 100,
inclusive,    Defendants.

1   TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE
2   CENTRAL DISTRICT OF CALIFORNIA:
3            PLEASE TAKE NOTICE that, for the reasons set forth below,
4   Defendants National Football League ("NFL") and NFL Properties LLC ("NFL
5   Properties"), collectively the "NFL Defendants," by their undersigned attorneys,
6   file this Notice of Removal to remove the claims against them in this action from
7   the Superior Court of the State of California, Los Angeles County, to the United
8   States District Court for the Central District of California pursuant to 28 U.S.C. §§
9   1367, 1441 and 1446.  Removal is made pursuant to 28 U.S.C. § 1331 on the basis
10  of federal question jurisdiction.  The grounds for removal are as follows:

**I.    INTRODUCTION AND BACKGROUND**

11           1.    On September 9 and 12, 2011, NFL Properties and the NFL,
12  respectively, were served by plaintiffs, former NFL players and certain of their
13  wives, with a Summons and Complaint (the "Complaint") filed in the Superior
14  Court of the State of California, Los Angeles County, No. LC094453.  Copies of
15  these papers and other documents filed in the action are annexed as **Exhibit A**.  On
16  September 9 and 12, 2011, NFL Properties and the NFL, respectively, were also
17  served with a Summons and Complaint filed in the Superior Court of the State of
18  California, Los Angeles County, in *Maxwell, et al.* v. *National Football League, et
19  al.*, No. BC465842.  On October 4, 2011, the NFL Defendants were served with a
20  Summons and First Amended Complaint filed in the Superior Court of the State of
21  California, Los Angeles County, in *Barnes, et al.* v. *National Football League, et
22  al.*, No. BC468483.  This action has been designated as related to the *Maxwell* and
23  *Barnes* actions pursuant to Cal. Rules of Court, rule 3.300, and the NFL
24  Defendants are filing notices of removal in each of the three actions.
25           2.    The Complaint alleges, among other things, that the NFL failed
26  to "warn and protect NFL players . . . against the long-term brain injury risks
27  associated with football-related concussions," failed to "enact league-wide

1   guidelines and mandatory rules regulating post-concussion medical treatment and
2   return-to-play standards for players who suffer a concussion," and fraudulently
3   misrepresented "that there was no link between concussions and later life
4   cognitive/brain injury." (Compl. ¶¶ 86-87, 387.) The Complaint further alleges
5   that NFL Properties "breached its duty to ensure that the equipment it licensed and
6   approved were of the highest possible quality and sufficient to protect NFL
7   players." (Compl. ¶ 394.) The Complaint alleges causes of action for negligence,
8   "negligence-monopolist," fraud, and loss of consortium against the NFL, and
9   negligence and loss of consortium against NFL Properties. (Compl. ¶¶ 355-97,
10  418-20.) The Complaint also alleges causes of action for strict liability for
11  manufacturing and design defects, failure to warn, negligence, and loss of
12  consortium against Riddell, Inc. d/b/a Riddell Sports Group, Inc.; All American
13  Sports Corp. d/b/a Riddell/All American; Riddell Sports Group, Inc.; Easton-Bell
14  Sports, Inc.; Easton-Bell Sports, LLC; EB Sports Corp.; and RBG Holdings Corp.
15  (collectively, the "Riddell Defendants"). (Compl. ¶¶ 398-420.) Plaintiffs seek
16  recovery of compensatory and general damages, special and incidental damages,
17  punitive damages, and costs. (Compl. p. 60.)

18       3.    The relationship between the NFL Defendants and NFL players
19  who played in the NFL from 1968 through 2010 is governed by various collective
20  bargaining agreements ("CBAs") that were executed and operative during those
21  periods.[1]   The CBAs are the product of exhaustive arm's-length negotiations

23  ---
    [1] During certain periods of time, following the expiration of a CBA, but before the
24  effective date of the following CBA (e.g., 1987-1993), no CBA was operative.
    During these periods, however, certain provisions of the expired CBAs, including
    the arbitration provisions, remained in effect. See Hayes v. Nat'l Football
25  League, 469 F. Supp. 252, 254 (C.D. Cal. 1979) ("[E]xpiration of the [CBA]
    between the [NFL and NFLPA] . . . does not excuse an otherwise existing
26  requirement to exhaust the [CBA's] grievance procedures."); Sherwin v.
    Indianapolis Colts, Inc., 752 F. Supp. 1172, 1174-75 & n.2 (N.D.N.Y. 1990)
27  ("[T]he [expired] 1982 CBA continues to govern the relationship of the parties at
    least with respect to arbitration since the parties have continued to honor and
28  utilize the arbitration provisions of the 1982 CBA.").

between the NFL Management Council (the exclusive bargaining representative of the NFL) and the NFL Players Association (the exclusive bargaining representative of NFL players), and "represent[] the complete understanding of the parties on all subjects covered [t]herein."  (CBA Art. II § 1 (1977-87; 1993-2010).)  The CBAs include, among other terms, provisions relating to player medical care and safety, equipment and dispute resolution.

## II.   **GROUNDS FOR REMOVAL**

4.   This Court has original jurisdiction of this action under 28 U.S.C. § 1331 because the action is one that is founded on a claim or right "arising under the Constitution, laws, or treaties of the United States."  A defendant may remove an action to federal court under 28 U.S.C. § 1441 if the complaint presents a federal question, such as a federal claim.  *See Avco Corp.* v. *Aero Lodge No. 735*, 390 U.S. 557, 560, 88 S. Ct. 1235, 1237, 20 L. Ed. 2d 126 (1968).

5.   Federal question jurisdiction exists in this case based on complete preemption under section 301 of the Labor Management Relations Act ("LMRA") of all claims by plaintiffs who played in the NFL from 1968 to 2010 under operative CBAs.[2]  *See Young* v. *Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 998 (9th Cir. 1987) ("[I]f federal law completely preempts a state law claim and supplants it with a federal claim, the state law claim may be removed to federal court.").

6.   The claims in the Complaint brought by plaintiffs who played prior to 1968 and during any interim periods between CBAs "form part of the same case or controversy."   28 U.S.C. § 1367.   This Court thus has supplemental jurisdiction over all claims and parties.  *See Bobadilla-German* v. *Bear Creek*

---

[2] The CBAs were signed by the NFL Management Council, an entity created by the NFL for the purpose of collective bargaining.  The NFL is bound by the CBAs' terms and may invoke section 301 preemption because plaintiffs' claims arise under the CBA and require the Court to interpret numerous CBA provisions. *See Atwater* v. *Nat'l Football League*, 626 F.3d 1170, 1178-79 (11th Cir. 2010); *Stringer* v. *Nat'l Football League*, 474 F. Supp. 2d 894, 901-92 (S.D. Ohio 2007).

*Orchards, Inc.*, 641 F.3d 391, 394 (9th Cir. 2011) (holding that district court "had jurisdiction over [plaintiffs'] state-law claims under 28 U.S.C. § 1367"); *Garcia* v. *Am. Red Cross*, No. CV-92 2513, 1992 WL 470325, at *1 (C.D. Cal. Aug. 12, 1992) (denying plaintiffs' motion for remand based on lack of jurisdiction over a pendent party co-defendant).

7.  The Central District of California is the federal district in which the Superior Court of the State of California, County of Los Angeles—where plaintiffs filed their Complaint—is located.

8.  This Notice of Removal is timely under 28 U.S.C. § 1446(b), which states that "notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

9.  Written notice of the filing of this Notice of Removal will be provided to plaintiffs, and a copy of this Notice will be filed in the appropriate state court, as required by 28 U.S.C. § 1446(d). This Notice of Removal is signed pursuant to Fed. R. Civ. Proc. 11. *See* 28 U.S.C. § 1446(a).

10.  Counsel for the Riddell Defendants has consented to the removal of the action. All defendants thus have consented to removal of the action. *See Parrino* v. *FHP, Inc.*, 146 F.3d 699, 703 (9th Cir. 1998) ("All defendants must join a notice of removal.").

## III.  **PLAINTIFFS' CLAIMS ARE PREEMPTED UNDER SECTION 301 OF THE LMRA**

11.  Section 301 of the LMRA provides that the federal courts have original jurisdiction over all "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). The Supreme Court has held that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be

1    resolved by reference to uniform federal law, whether such questions arise in the

2    context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-*

3    *Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 211, 105 S. Ct. 1904, 1911, 85 L. Ed. 2d

4    206 (1985); *see also Hubbard* v. *United Airlines, Inc.*, 927 F.2d 1094, 1098-99 (9th

5    Cir. 1991) (holding that plaintiff's fraud and RICO claims were preempted because

6    allegations "involve[d] violation of a right created by the CBA"). Thus, section

7    301 preempts tort claims seeking to vindicate "state-law rights and obligations that

8    do not exist independently of [collective bargaining] agreements" and also claims

9    "substantially dependent upon analysis of the terms of [a collective-bargaining]

10   agreement." *Allis-Chalmers*, 471 U.S. at 213, 220; *Young*, 830 F.2d at 1001

11   (holding that plaintiff's fraud and misrepresentation claims were preempted by

12   section 301).

13          12.    Here, the claims of plaintiffs who played in the NFL from 1968

14   to 2010 when CBAs were effective are preempted by section 301 because the

15   rights those plaintiffs seek to vindicate were created by the CBAs, and are not

16   based on an independent duty "owed to every person in society." *See United*

17   *Steelworkers of Am.* v. *Rawson*, 495 U.S. 362, 370-71, 110 S. Ct. 1904, 1910, 109

18   L. Ed. 2d 362 (1990) (holding in the context of a labor dispute involving unionized

19   employees that, absent an independent duty running from defendants "to every

20   person in society," any such duty to plaintiffs must arise out of the CBA); *see also*

21   *Adkins* v. *Mireles*, 526 F.3d 531, 540-41 (9th Cir. 2008) (holding that plaintiffs'

22   negligent misrepresentation claim was preempted because plaintiffs "failed to

23   show a separate, independent duty upon which to base this claim").

24          13.    Plaintiffs' claims also are preempted because those claims, and

25   the scope of any duty owed by the NFL Defendants, are "inextricably intertwined

26   with consideration of the terms of [the CBAs]" or "substantially dependent" on an

27   analysis of the relevant provisions of the CBAs. *Allis-Chalmers*, 471 U.S. at 213,

28   215, 220; *see also Bale* v. *Gen. Tel. Co. of Ca.*, 795 F.2d 775, 780 (9th Cir. 1986)

1  (holding that plaintiffs' fraud and negligent misrepresentation claims were

2  preempted because their "adjudication . . . would require reference to, and

3  interpretation of, the terms of the collective bargaining agreement"); *Stringer* v.

4  *Nat'l Football League*, 474 F. Supp. 2d 894, 909-10 (S.D. Ohio 2007) (wrongful

5  death claim against the NFL based on, among other things, the NFL's alleged

6  failure to regulate adequately practices, games, equipment, and medical care to

7  minimize the risk of heat-related illness, was preempted because the claim was

8  "inextricably intertwined and substantially dependent upon an analysis of certain

9  CBA provisions imposing duties on the clubs with respect to medical care and

10  treatment of NFL players").

11          14.     For example, adjudicating plaintiffs' claims will hinge on

12  provisions of the CBAs relating to player medical care, rule-making, and

13  equipment safety.  *See, e.g.*, NFL CBA Art. XXXI § 1 (1982), Art. XLIV § 1

14  (1993) (requiring physician on staff of Member Clubs to inform a player in writing

15  if he has a physical condition that "could be significantly aggravated by continued

16  performance"); NFL CBA Art. XXXI § 2 (1982-87), Art. XLIV § 2 (1993-2010)

17  ("[F]ull-time head trainers and assistant trainers . . . [must] be certified by the

18  National Athletic Trainers association."); Constitution and By-Laws for Major

19  Professional Football Operations as Conducted by the National Football League

20  and the American Football League, Art. XIX, § 19.5 (1969), and NFL Constitution

21  and Bylaws Art. XIX § 19.5 (1970-2010) (requiring that the home team provide a

22  doctor and ambulance for each game since the AFL-NFL merger);[3] NFL

23  Constitution and Bylaws Art. XVII supplement 12 (1980), Art. XVII (1984-85),

24  Art. XVII § 17.16(E) (1988-2010) ("All determinations of recovery time for major

25  and minor injuries must be by the club's medical staff and in accordance with the

26

---

27  [3] The Constitution and Bylaws are incorporated by reference in the CBA.  *See Hill*
    v. *Potter*, No. 06-7051, 2010 WL 4450405, at *4 (C.D. Cal. Oct. 29, 2010)
28  (documents referenced in CBA are incorporated into the CBA).

club's medical standards" for players categorized as "Reserve/Injured" on the Reserve List); NFL CBA Art. V §§ 1-4 (1970-77), Art. XI § 8 (1977-87), Art. XIII § 1(a) (1993-2010) (creating a Joint Committee to study, among other things, player safety issues); NFL CBA Art. XI § 8 (1977-82), Art. XIII § 1(d) (2002-10), Art. XI § 8 (1982-87), Art. XIII § 1(b)-(c) (1993-2010) (mandating procedures for review, investigation and resolution of disputes involving proposed rule changes that "could adversely affect player safety"); Art. XI § 9 (1977-87), Art. XIII § 2 (1993-2010) (inviting player representatives to the Competition Committee meetings "to represent the players' viewpoint on rules"). Indeed, a court considering allegations similar to those alleged here determined that plaintiff's claim was substantially dependent on, and inextricably intertwined with, an analysis of CBA provisions concerning medical care and treatment of NFL players. *See Stringer*, 474 F. Supp. 2d at 911.

15. Although plaintiffs allege that they are not covered by CBAs because "NFL retired players have never been the subject of or a party to Collective Bargaining" (Compl. ¶ 70), plaintiffs' claims are premised solely on alleged conduct occurring at the time that they played NFL football. (*See, e.g.*, Compl. ¶ 82(a) ("[The NFL] owed a duty to protect Plaintiffs on the playing field"); Compl. ¶ 82(d) ("[The NFL] owed a duty to Plaintiffs to have in place strict return-to-play guidelines to prevent CTE and/or concussion injury").) Therefore, to resolve plaintiffs' claims, the Court will need to interpret provisions of the CBAs that were operative during plaintiffs' NFL careers. *See Mendes* v. *W.M. Lyles Co.*, No. CIV F 07-1265, 2008 WL 171003, at *10 (E.D. Cal. Jan. 18, 2008) (dismissing plaintiff's underpayment claims for failure to exhaust grievance remedies contained in an expired collective bargaining agreement that was operative during the time the alleged underpayment took place); *Cameron* v. *Idearc Media Corp.*, No. 08-12010, 2009 WL 2496439, at *6 (D. Mass. Aug. 13, 2009) (finding section 301 preemption of tortious interference claim brought after

1   expiration of CBA when claim related to termination of employment prior to

2   expiration).

3          16.    In filing this Notice of Removal, the NFL Defendants do not

4   waive any defenses that may be available to them, including without limitation

5   jurisdiction, venue, standing, or procedures for the disposition of this action in

6   accordance with the terms of the CBA. Nor do the NFL Defendants admit any of

7   the factual allegations in the Complaint; they expressly reserve the right to contest

8   those allegations at the appropriate time.

9         WHEREFORE, the NFL Defendants remove the above-captioned

10  action brought against them in the Superior Court of the State of California, Los

11  Angeles County.

12  DATED:  October 11, 2011      MUNGER, TOLLES & OLSON LLP

13

14                             By: _Ron Olson Jr_____

15                                RONALD L. OLSON

16                          -and-

17                          PAUL, WEISS, RIFKIND, WHARTON &

18                          GARRISON LLP

19                          Attorneys for Defendants

20                          NATIONAL FOOTBALL LEAGUE
                            and NFL PROPERTIES LLC

21

22

23

24

25

26

27

28

# EXHIBIT A

# Case Summary

**Case Number:** LC094453
DAVE PEAR, ET AL VS NATIONAL FOOTBALL LEAGUE, ET AL

**Filing Date:** 08/03/2011
**Case Type:** Prdct Liablty (not asbes,tox,envir (General Jurisdiction)
**Status:** Pending

---

## Future Hearings

**11/15/2011** at 08:30 am in department NWT at 6230 Sylmar Ave., Van Nuys, CA 91401
Conference-Initial Status

**12/21/2011** at 08:30 am in department NWT at 6230 Sylmar Ave., Van Nuys, CA 91401
Conference-Case Management

---

Documents Filed | Proceeding Information

## Parties

Click on any of the below link(s) to see names that begin with the letter indicated:
A - D   E - L   M - O   P - T   V - W

ABRAMS JR. BOBBY E - Plaintiff

ABRAMS STEPHANIE - Plaintiff

ADAMS PATRICE - Plaintiff

ADAMS STEFON - Plaintiff

ALL AMERICAN SPORTS CORPORATION - Defendant

BARNETT CHELONDA - Plaintiff

BARNETT FRED - Plaintiff

BARNETT LINDSAY - Plaintiff

BARNETT TIMOTHY - Plaintiff

BOUTTE MARC - Plaintiff

CARTER MARTY - Plaintiff

COPELAND HORACE - Plaintiff

Ex A_000011

Los Angeles Superior Court - Civil Case Summary

COPELAND TANGELA - Plaintiff

CRAIG DENISE - Plaintiff

CRAIG FRANCISCO - Plaintiff

CRUMP ANDREA - Plaintiff

CRUMP HARRY - Plaintiff

DALTON LIONAL - Plaintiff

DAVIS LORENZO - Plaintiff

DOES 1 THROUGH 100 INCLUSIVE - Defendant

DORSETT JANET - Plaintiff

DORSETT TONY - Plaintiff

DOTSON MONIQUE - Plaintiff

DOTSON SANTANA - Plaintiff

Click on any of the below link(s) to see names that begin with the letter indicated:
TOP   A - D   E - L   M - O   P - T   V - W

EASTON-BELL SPORTS INC. - Defendant

EASTON-BELL SPORTS LLC - Defendant

EB SPORTS CORP. - Defendant

ELROD JAMES - Plaintiff

ELROD MARLENE - Plaintiff

FORD BERNARD - Plaintiff

FOSTER BARRY - Plaintiff

FOSTER TERAY - Plaintiff

GANN KAREN - Plaintiff

GANN MICHAEL - Plaintiff

GIRARDI THOMAS VINCENT - Attorney-Plaintiff

HAMPTON LORENZO - Plaintiff

Ex A_000012

HAMPTON MARCIA - Plaintiff

HARRISON DWIGHT - Plaintiff

HENDERSON KEITH - Plaintiff

KEY CATHERINE - Plaintiff

KEY WADE - Plaintiff

KING EMANUEL - Plaintiff

KING KENDRA - Plaintiff

LAWRENCE HENRY - Plaintiff

LUSH DEBRA - Plaintiff

LUSH MICHAEL - Plaintiff

Click on any of the below link(s) to see names that begin with the letter indicated:
TOP   A - D   E - L   M - Q   P - T   V - W

MARSHALL ANTHONY - Plaintiff

MARSHALL LEONARD - Plaintiff

MARSHALL MARYANN - Plaintiff

MARTIN EMANUEL - Plaintiff

MARTIN ERIC W - Plaintiff

MARTIN STACY - Plaintiff

MAY DEEMS - Plaintiff

MAY SUSAN - Plaintiff

MCCRARY FRED - Plaintiff

MCCRAY NERMA - Plaintiff

MCGEE ANTONIO - Plaintiff

MCGEE SUE - Plaintiff

MILLER DANNY - Plaintiff

MILLER LISA - Plaintiff

Case 2:11-cv-08395-R -MAN  Document 1  Filed 10/11/11  Page 15 of 106  Page ID #:33
Los Angeles Superior Court – Civil Case Summary

Page 4 of 6

MOORE REGGIE - Plaintiff

MOSS ZEFROSS - Plaintiff

NATIONAL FOOTBALL LEAGUE - Defendant

NFL PROPERTIES LLC - Defendant

OUTLAW JOHN L - Plaintiff

OUTLAW LINDA - Plaintiff

Click on any of the below link(s) to see names that begin with the letter indicated:
TOP   A-D   E-L   M-Q   P-T   V-W

PEAR DAVE - Plaintiff

PEAR HEIDI - Plaintiff

PRUITT JAMES - Plaintiff

RBG HOLDINGS CORP - Defendant

REMBERT JOHNNY - Plaintiff

RICHARDSON EARLINE - Plaintiff

RICHARDSON WILLIE - Plaintiff

RIDDELL INC. - Defendant

RIDDELL SPORTS GROUP INC. - Defendant's DBA

RIDDELL SPORTS GROUP INC. - Defendant

RIDDELL/ALL AMERICAN - Defendant's DBA

ROUSON LEE - Plaintiff

ROUSON LISA - Plaintiff

SIMS DAVID - Plaintiff

SMITH LANCE - Plaintiff

SUCI MERITA - Plaintiff

SUCI ROBERT - Plaintiff

TANANJALYN - Plaintiff

Ex A_000014

THOMAS BRODERICK - Plaintiff

THOMAS YVONNE - Plaintiff

TYLER CARMEN - Plaintiff

TYLER WENDELL - Plaintiff

Click on any of the below link(s) to see names that begin with the letter indicated:
TOP   A - D   E - L   M - O   P - T   V - W

VANWAGNER JAMES - Plaintiff

VANWAGNER KELLEY - Plaintiff

WILLIAMS CALVIN - Plaintiff

WILLIAMS CHARESE - Plaintiff

Click on any of the below link(s) to see names that begin with the letter indicated:
TOP   A - D   E - L   M - O   P - T   V - W

---

Case Information  |  Party Information  |  Proceeding Information

**Documents Filed** (Filing dates listed in descending order)

**09/27/2011** Proof of Service-Summons & Com (RIDDEL SPORTS GROUP, INC )
Filed by Attorney-Plaintiff

**09/27/2011** Proof of Service-Summons & Com (EASTON-BELL SPORTS, LLC )
Filed by Attorney-Plaintiff

**09/27/2011** Proof of Service-Summons & Com (NATIONAL FOOTBALL LEAGUE )
Filed by Attorney-Plaintiff

**09/27/2011** Proof of Service-Summons & Com (EB SPORTS CORP. )
Filed by Attorney-Plaintiff

**09/27/2011** Proof of Service-Summons & Com (RBG HOLDINGS CORP )
Filed by Attorney-Plaintiff

**09/27/2011** Proof of Service-Summons & Com (ALL AMERICAN SPORTS
CORPORATION DBA RIDDELL/ALL AMERICAN )
Filed by Attorney-Plaintiff

**09/27/2011** Proof of Service-Summons & Com (NFL PROPERTIES, LLC )
Filed by Attorney-Plaintiff

**09/27/2011** Proof of Service-Summons & Com (RIDDELL, INC DBA RIDDELL
SPORTS GROUP, INC. )
Filed by Attorney-Plaintiff

Ex A_000015

**09/27/2011** Proof of Service-Summons & Com (EASTON-BELL SPORTS, INC. )
Filed by Attorney-Plaintiff

**08/03/2011** Notice-Related Cases (R/T BC465842 Dept. D-51 )
Filed by Attorney-Plaintiff

**08/03/2011** Summons-Issued
Filed by Attorney-Plaintiff

**08/03/2011** Notice-Case Management Conference

**08/03/2011** Complaint

Case Information | Party Information | Documents Filed

**Proceedings Held** (Proceeding dates listed in descending order)
None

Case Information | Party Information | Documents Filed | Proceeding Information

Ex A_000016

91406
A7260

ORIGINAL

1 | GIRARDI | KEESE
2 | THOMAS V. GIRARDI, Bar No. 36603
  | 1126 Wilshire Boulevard
3 | Los Angeles, California 90017
  | Telephone: (213) 977-0211
4 | Facsimile: (213) 481-1554
5 |
6 | RUSSOMANNO & BORRELLO, P.A.
  | Herman Russomanno, (Florida Bar No. 240346)
7 | Robert Borrello, (Florida Bar No. 764485)
  | 150 West Flagler Street - PH 2800
8 | Miami, FL 33130
9 | Telephone: (305) 373-2101
  | Facsimile: (305) 373-2103
10 |
11 | GOLDBERG, PERSKY & WHITE, P.C.
   | Jason E. Luckasevic, (Pennsylvania Bar No. 85557)
12 | 1030 Fifth Ave.
13 | Pittsburgh, PA 15219
   | Telephone: (412) 471-3980
14 | Facsimile: (412) 471-8308
15 |
   | *Attorneys for Plaintiffs*
16 |
17 |
18 |              SUPERIOR COURT OF THE STATE OF CALIFORNIA
19 |                        COUNTY OF LOS ANGELES

**FILED**
Superior Court of California
County of Los Angeles

AUG 09 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
TAMISHA MENEFEE

BY FAX

20 | DAVE PEAR and HEIDI PEAR, his   )   CASE NO.   LC094453
21 | wife; LEONARD MARSHALL and      )
   | MARYANN MARSHALL, his wife;     )   **PLAINTIFFS' COMPLAINT FOR**
22 | BARRY FOSTER and TERAY          )   **DAMAGES AND DEMAND FOR**
23 | FOSTER, his wife; ERIC W. MARTIN )  **JURY TRIAL**
   | and STACY MARTIN, his wife;     )
24 | LANCE SMITH; HENRY              )
   | LAWRENCE; ROBERT SUCI and       )
25 | MERITA SUCI, his wife; DEEMS    )   1. Negligence- Monopolist
26 | MAY and SUSAN MAY, his wife;    )   2. Negligence
   | ZEFROSS MOSS; ANTONIO MCGEE )       3. Fraud
27 | and SUE MCGEE, his wife; JOHN L. )   4. Negligence
28 | OUTLAW and LINDA OUTLAW, his )       5. Strict Liability- Design Defect

-1-

COMPLAINT FOR DAMAGES

Ex A_000017

wife; BERNARD FORD; JAMES
VANWAGNER and KELLEY
VANWAGNER; BOBBY E. ABRAMS,
Jr. and STEPHANIE ABRAMS, his
wife; JOHNNY REMBERT;
FRANCISCO CRAIG and DENISE
CRAIG, his wife; JAMES ELROD and
MARLENE ELROD, his wife; FRED
BARNETT and LINDSAY BARNETT,
his wife; KEITH HENDERSON;
JAMES PRUITT; WENDELL TYLER
and CARMEN TYLER, his wife;
HORACE COPELAND and TANGELA
COPELAND, his wife; MICHAEL
LUSH and DEBRA LUSH, his wife;
MICHAEL GANN and KAREN
GANN, his wife; TIMOTHY
BARNETT and CHELONDA
BARNETT, his wife; CALVIN
WILLIAMS and CHARESE
WILLIAMS, his wife; DAVID SIMS;
FRED MCCRARY and NERMA
MCCRAY his wife; ANTHONY
MARSHALL; LEE ROUSON and LISA
ROUSON, his wife; DANNY MILLER
and LISA MILLER, his wife; WADE
KEY and CATHERINE KEY, his wife;
TONY DORSETT and JANET
DORSETT, his wife; EMANUEL
MARTIN; DWIGHT HARRISON;
HARRY CRUMP and ANDREA
CRUMP, his wife; SANTANA
DOTSON and MONIQUE DOTSON,
his wife; STEFON ADAMS and
PATRICE ADAMS, his wife;
LORENZO HAMPTON and MARCIA
HAMPTON, his wife; LORENZO
DAVIS; EMANUEL KING and
KENDRA KING, his wife; WILLIE
RICHARDSON and EARLINE
RICHARDSON, his wife; MARC
BOUTTE and TANANJALYN, his
wife; REGGIE MOORE; LIONAL

6. Strict Liability- Manufacturing Defect
7. Failure to Warn
8. Negligence
9. Loss of Consortium

-2-

COMPLAINT FOR DAMAGES

Ex A_000018

| | |
|---|---|
| 1 | DALTON; BRODERICK THOMAS ) and YVONNE THOMAS, his wife; ) |
| 2 | MARTY CARTER, ) |
| 3 | Plaintiffs, ) |
| 4 | ) |
| 5 | vs. ) |
| 6 | NATIONAL FOOTBALL LEAGUE; ) NFL PROPERTIES LLC; RIDDELL, ) |
| 7 | INC. d/b/a RIDDELL SPORTS ) |
| 8 | GROUP, INC., ALL AMERICAN ) SPORTS CORPORATION, d/b/a ) |
| 9 | RIDDELL/ALL AMERICAN; ) |
| 10 | RIDDELL SPORTS GROUP, INC, ) EASTON-BELL SPORTS, INC.; ) |
| 11 | EASTON-BELL SPORTS, LLC; EB ) |
| 12 | SPORTS CORP.; and RBG HOLDINGS ) CORP.; and JOHN DOES 1 through ) |
| 13 | 100, Inclusive, ) |
| 14 | Defendants. ) |
| 15 | ) |
| 16 | |

17  The Plaintiffs, all individuals, hereby complains of Defendants listed above and hereby alleges

18  as follows:

## PARTIES

### Plaintiffs:

20  

21      1.   Mr. Dave Pear and his wife, Heidi, are residents of and domiciled in the State of

22  Washington .

23      2.   Mr. Leonard Marshall and his wife, Maryann are residents of and domiciled in the

24  State of Florida.

25      3.   Mr. Barry Foster and his wife, Teray, are residents of and domiciled in the State of

26  Texas.

27  

28  

-3-

COMPLAINT FOR DAMAGES

Ex A_000019

4.     Mr. Eric W. Martin and his wife, Stacy, are residents of and domiciled in the State of Texas.

5.     Mr. Lance Smith is a resident of and domiciled in the State of North Carolina.

6.     Mr. Henry Lawrence is a resident of and domiciled in the State of Florida.

7.     Mr. Robert Suci and his wife, Merita, are residents of and domiciled in the State of Michigan.

8.     Mr. Deems May and his wife, Susan, are residents of and domiciled in the State of North Carolina.

9.     Mr. Zefross Moss is a resident of and domiciled in the State of Alabama.

10.    Mr. Antonio McGee and his wife, Sue, are residents of and domiciled in the State of Georgia.

11.    Mr. John L. Outlaw and his wife, Linda, are residents of and domiciled in the State of Maryland.

12.    Mr. Bernard Ford is a resident of and domiciled in the State of Florida.

13.    Mr. James VanWagner and his wife, Kelley, are residents of and domiciled in the State of Oregon.

14.    Mr. Bobby E. Abrams, Jr. and his wife, Stephanie, are residents of and domiciled in the State of Alabama.

15.    Mr. Johnny Rembert is a resident of and domiciled in the State of Florida.

16.    Mr. Francisco Craig and his wife, Denise, are residents of and domiciled in the State of California.

17.    Mr. James Elrod and his wife, Marlene, are residents of and domiciled in the State of Oklahoma.

18.    Mr. Fred Barnett and his wife, Lindsay, are residents of and domiciled in the State of Pennsylvania.

19.    Mr. Keith Henderson is a resident of and domiciled in the State of Georgia.

20.    Mr. James Pruitt is a resident of and domiciled in the State of Florida.

-4-

COMPLAINT FOR DAMAGES

21.     Mr. Wendell Tyler and his wife, Carmen, are residents of and domiciled in the State of California.

22.     Mr. Horace Copeland and his wife, Tanglea, are residents of and domiciled in the State of Florida.

23.     Mr. Michael Lush and his wife, Debra, are residents of and domiciled in the State of Pennsylvania.

24.     Mr. Michael Gann and his wife, Karen, are residents of and domiciled in the State of Georgia.

25.     Mr. Timothy Barnett and his wife, Chelonda, are residents of and domiciled in the State of Missouri.

26.     Mr. Calvin Williams and his wife, Charese, are residents of and domiciled in the State of Maryland.

27.     Mr. David Sims is a resident of and domiciled in the State of Georgia.

28.     Mr. Fred McCrary and his wife, Nerma, are residents of and domiciled in the State of Georgia.

29.     Mr. Anthony Marshall is a resident of and domiciled in the State of Alabama.

30.     Mr. Lee Rouson and his wife, Lisa, are residents of and domiciled in the State of New Jersey.

31.     Mr. Danny Miller and his wife, Lisa, are residents of and domiciled in the State of Pennsylvania.

32.     Mr. Wade Key and his wife, Catherine, are residents of and domiciled in the State of Texas.

33.     Mr. Tony Dorsett and his wife, Janet, are residents of and domiciled in the State of Texas.

34.     Mr. Emanuel Martin is a resident of and domiciled in the State of Florida.

35.     Mr. Dwight Harrison is a resident of and domiciled in the State of Texas.

36.     Mr. Harry Crump and his wife, Andrea, are residents of and domiciled in the State of Rhode Island.

-5-

COMPLAINT FOR DAMAGES

37. Mr. Santana Dotson and his wife, Monique, are residents of and domiciled in the State of Texas.

38. Mr. Stefon Adams and his wife, Patrice, are residents of and domiciled in the State of Georgia.

39. Mr. Lorenzo Hampton and his wife, Marcia, are residents of and domiciled in the State of Florida.

40. Mr. Lorenzo Davis is a resident of and domiciled in the State of Florida.

41. Mr. Emanuel King and his wife, Kendra, are residents of and domiciled in the State of Alabama.

42. Mr. Willie Richardson and his wife, Earline, are residents of and domiciled in the State of Mississippi.

43. Mr. Marc Boutte and his wife, Tananjalyn, are residents of and domiciled in the State of Texas.

44. Mr. Reggie Moore is a resident of and domiciled in the State of Texas.

45. Mr. Lional Dalton is a resident of and domiciled in the State of Florida.

46. Mr. Broderick Thomas and his wife, Yvonne, are residents of and domiciled in the State of Texas.

47. Mr. Marty Carter is a resident of and domiciled in the State of Georgia.

**Defendants:**

48. Defendant National Football League ("the NFL") is an unincorporated association with its headquarters located in the State of New York. The NFL regularly conducts business in California.

49. Defendant NFL Properties, LLC as the successor-in-interest to National Football League Properties Inc. ("NFL Properties") is a limited liability company organized and existing under the laws of the State of Delaware with its headquarters in the State of New York. NFL

-6-

COMPLAINT FOR DAMAGES

Ex A_000022

Properties is engaged in, among other activities, approving, licensing and promoting equipment used by all the NFL teams.  NFL Properties regularly conducts business in California.

50.    Defendant Riddell, Inc. (d/b/a Riddell Sports Group, Inc.) is a corporation organized and existing under the laws of the State of Illinois, and is engaged in the business of designing, manufacturing, selling and distributing football equipment, including helmets, to the NFL and since 1989 has been the official helmet of the NFL.  Riddell, Inc. regularly conducts business in California.

51.    Defendant All American Sports Corporation, d/b/a Riddell/All American, is a corporation organized and existing under the laws of the State of Delaware and is engaged in the business of designing, manufacturing, selling and distributing football equipment, including helmets, to the NFL and since 1989 has been the official helmet of the NFL.  All American Sports regularly conducts business in California.

52.    Defendant Riddell Sports Group, Inc. is a Delaware corporation with its principal place of business at 6255 N. State Highway, #300, Irving, Texas 76038.  Riddell Sports Group, Inc. regularly conducts business in California.

53.    Defendant Easton-Bell Sports, Inc. is a California corporation, incorporated in Delaware with a principal place of business at 7855 Haskell Avenue, Suite 200, Van Nuys, California 91406 and is a parent corporation of Riddell Sports Group Inc.

54.    Defendant Easton-Bell Sports, LLC is the parent corporation of Easton-Bell Sports, Inc. and is incorporated in Delaware, with a principal place of business at 152 West 57th Street, New York, New York 10019.  Easton-Bell Sports, LLC regularly conducts business in California.

55.    Defendant EB Sports Corp. is a Delaware corporation with its principal place of business at 7855 Haskell Avenue, Van Nuys, California 91406.

56.    Defendant RBG Holdings Corp. is a Delaware corporation with its principal place of business at 7855 Haskell Avenue, Suite 350, Van Nuys, California 91406.

57.    Defendants Riddell, Inc., Riddell Sports Group Inc., All American Sports Corporation, Easton-Bell Sports, Inc., EB Sports Corp., Easton-Bell Sports, LLC, and RBG Holdings Corp., shall hereinafter be referred to collectively as the "Riddell Defendants."

-7-

COMPLAINT FOR DAMAGES

**JURISDICTION AND VENUE**

58.     Jurisdiction is based upon the California Constitution Article 6, Section 10.

59.     Venue is proper in this Court pursuant to Section 395 (A) of the California Code of Civil Procedure.


**INTRODUCTION**

60.     The National Football League was founded as the American Professional Football Association in 1920.

61.     The American Professional Football Association changed its name to the National Football League in 1922.  By 1924, there were 23 franchises or teams that devised the NFL.

62.     The American Football League operated from 1960 to 1969.  In 1970, it merged with the National Football League to create the American Football Conference.

63.     Today, the National Football League consists of two structured conferences, the AFC and the NFC, with 32 team members.

64.     Each team functions as a separate business but operates under shared revenue generated through broadcasting, merchandising and licensing.

65.     The Supreme Court of the United States of America in *American Needle, Inc. v. NFL, et al.,* 130 S.Ct. 2201 (U.S. 2010), ruled that the NFL is a separate entity from each of its teams.

66.     The NFL is by far the most attended domestic sports league in the world by average attendance per game with 67,509 fans per game in the regular season (2009).

67.     The NFL is a 9 billion dollar-a-year business.


**NFL AND THE CBA**

68.     Until March of 2011, NFL players were all members of a union called the National Football League Players Association ("NFLPA").  The NFLPA negotiates the general minimum contract for all players in the league with the National Football League Management Council ("NFLMC").  This contract is called the Collective Bargaining Agreement ("CBA") and it is the

-8-

Ex A_000024

central document that governs the negotiation of individual player contracts for all of the league's players. However, historically, the NFL retired players have never been the subject of or a party to Collective Bargaining.

69.     The CBA had been in place since 1993 and was amended in 1998 and again in 2006. The CBA was originally scheduled to expire at the end of the 2012 season but in 2008 the owners exercised their right to opt-out of the agreement two years earlier. In 2011, the parties in trying to negotiate a new CBA reached an impasse and the NFL owners locked the players out. Even though the 4 ½ month 2011 lockout has ended, a CBA does not exist between the NFLMC and NFLPA.

70.     The plaintiffs herein are all retirees and not covered by the CBA nor are they a subject of or parties to bargaining between the NFL and the NFLPA. Thus, the plaintiffs' claims are not preempted by federal labor law since the CBA does not apply to their present claims and, additionally, it does not currently exist.

### CTE AND CONCUSSION INJURY

71.     In 2002, Dr. Bennet Omalu, a forensic pathologist and neuropathologist found Chronic Traumatic Encephalopathy (CTE) in the brain of Hall of Famer, Mike Webster.

72.     By 2007, Dr. Omalu found a fourth case linking the death of a former NFL player to CTE brain damage from his football career.

73.     Dr. Omalu says that the brain damage he found in four ex-players who died is the same condition found in punch-drunk boxers.

74.     Around the same time, researchers without NFL ties surveyed retired football players and their findings showed that players who had multiple concussions were more likely to report being diagnosed with depression.

75.     Dr. Omalu questioned "Where was the NFL when we found this disease?"

76.     The NFL undertook the responsibility of studying concussion research in 1994 through funding a Committee known as the "NFL Committee on Mild Traumatic Brain Injury".

-9-

COMPLAINT FOR DAMAGES

77.     The NFL Committee on Mild Traumatic Brain Injury published their findings in 2004 showing "no evidence of worsening injury or chronic cumulative effects" from multiple concussions.  In a related study, this Committee found "many NFL players can be safely allowed to return to play" on the day of a concussion if they are without symptoms and cleared by a physician.

78.     As further evidence, Commissioner Roger Goodell in June of 2007 admitted publicly that the NFL has been studying the effects of traumatic brain injury for "close to 14 years …"

79.     It was not until June of 2010 that the NFL acknowledged that concussions can lead to dementia, memory loss, CTE and related symptoms by publishing warning to every player and team.

## NFL'S DUTY TO PLAYERS AND THE PUBLIC

80.     The NFL overtly undertook a duty to study concussions on behalf of all American Rules Football leagues and players.

81.     As the industry icon, all American Rules Football leagues modeled their programs after the NFL.

82.     In turn, the NFL possesses monopoly power over American Football.  As such, it also possesses monopoly power over the research and education of football injuries to physicians, trainers, coaches and individuals with brain damage such as Plaintiffs who played in the NFL, as well as the public at large.  As a result, it owed a duty to everyone including individuals such as Plaintiffs in the following respects:

(a)     It owed a duty to protect Plaintiffs on the playing field;

(b)     It owed a duty to Plaintiffs to educate them and other players in the NFL about CTE and/or concussion injury;

(c)     It owed a duty to Plaintiffs to educate trainers, physicians, and coaches about CTE and/or concussion injury;

(d)     It owed a duty to Plaintiffs to have in place strict return-to-play guidelines to prevent CTE and/or concussion injury;

(e)     It owed a duty to Plaintiffs to promote a "whistleblower" system where teammates would bring to the attention of a

-10-

COMPLAINT FOR DAMAGES

Ex A_000026

trainer, physician or coach that another player had sustained

concussion injury;

 (f) It owed a duty to Plaintiffs to design rules and penalties

for players who use their head or upper body to hit or tackle;

 (g) It owed a duty to Plaintiffs to design rules to eliminate the risk

of concussion during games and/or practices;

 (h) It owed a duty to Plaintiffs to promote research into and

cure for CTE and the effects of concussion injury over a

period of time; and

 (i) It owed a duty to State governments, local sports organizations, all American Rules

Football leagues and players, and the public at large to protect against the long-term

effects of CTE and/or concussion injury.

83. The NFL knew as early as the 1920's of the harmful effects on a player's brain of

concussions; however, until June of 2010 they concealed these facts from coaches, trainers,

players, and the public.

84. Plaintiffs did not know the long-term effects of concussions and relied on the NFL

and the Riddell Defendants to protect them.

## NFL'S KNOWLEDGE OF THE RISK OF CONCUSSIONS

85. For decades, Defendants have known that multiple blows to the head can lead to

long-term brain injury, including memory loss, dementia, depression and CTE and its related

symptoms.

86. This action arises from the Defendants' failure to warn and protect NFL players, such

as Plaintiffs against the long-term brain injury risks associated with football-related concussions.

87. This action arises because the NFL Defendants committed negligence by failing to

exercise its duty to enact league-wide guidelines and mandatory rules regulating post-concussion

COMPLAINT FOR DAMAGES

Ex A_000027

1 | medical treatment and return-to-play standards for players who suffer a concussion and/or multiple
2 | concussions.

3 |    88.    By failing to exercise its duty to enact reasonable and prudent rules to protect players
4 | against the risks associated with repeated brain trauma, the NFL's failure to exercise its
5 | independent duty has led to the deaths of some, and brain injuries of many other former players,
6 | including Plaintiffs.

7 |    89.    The following information, which is by no means comprehensive, was available and
8 | easily accessible to Defendants:

9 |    (a)    In the 1890's, Admiral Joseph Mason "Bull" Reeves, who is more
10 |           known as the father of carrier aviation, played American football in the
11 |           1890's for the Naval Academy.   He had suffered so many blows to his
12 |           head that a navy doctor advised him that he could risk death or insanity
13 |           if he received another kick to his head.

14 |    (b)    In 1913, Glenn "Pop" Warner, commented that he had "many times
15 |           seen cases when hard bumps on the head so dazed the player
16 |           receiving them that he lost his memory for a time and had to be
17 |           removed from the game.";

18 |    (c)    In 1928, the first case of "Punch Drunk" in boxers was published
19 |           in the *American Association Journal* by HS Martland;

20 |    (d)    A 1937 article on "Dementia puglisistica" was published in the
21 |           *US Navy Medical Bulletin;*

22 |    (e)    A 1952 article on "Electroencephalographic changes in professional
23 |           boxers was published in the *American Medical Association*
24 |           *Journal;*

25 |    (f)    A 1952 New England Journal of Medicine Article Vol. 246, pp.
26 |           554-556 talked about a three strike rule for concussions in 1945
27 |           – three concussions and you should retire from football;

28 |    (g)    A 1954 article on "Observations on the clinical and brain wave

-12-

COMPLAINT FOR DAMAGES

patterns of professional boxers" was published in the *American Medical Association Journal;*

(h)    A 1956 article on "Diffuse degeneration of the cerebral white matter in severe dementia following head injury" was published in the *Neurological, Neurosurgery and Psychiatry Journal;*

(i)    A 1957 article on the "Medical aspects of boxing, particularly from a neurological standpoint" was published in the *British Medical Journal;*

(j)    A 1959 article on the "Observations of the pathology of insidious dementia following head injury" was published in the *Journal of Mental Science;*

(k)    A 1966 article on "Concussion amnesia" in *Neurology;*

(l)    A 1968 article on "brains of boxers" published in *Neurochirurgia;*

(m)    A 1969 report by the Royal College of Physicians of London confirmed the danger of chronic brain damage occurring in boxers as a result of their careers;

(n)    A 1969 article on "Organic psychosyndromes due boxing" in the *British Journal of Psychiatry;*

(o)    A 1969 book on "Brain damage in boxers – A study of the prevalence of traumatic encephalopathy among ex-professional boxers" by AH Roberts;

(p)    A 1970 article on "retrograde memory immediately after concussion" published in the *Lancet;*

(q)    In 1973, a disabling and sometimes deadly condition involving the second impact concussion occurring before symptoms of a first concussion was described by R.C. Schneider.  This later was coined the Second Impact Syndrome in 1984;

(r)    A 1973 article on "the aftermath of boxing" published in *Psychology*

-13-

COMPLAINT FOR DAMAGES

*Medicine;*

(s)   JA Corsellis, CJ Bruton, D Freeman-Browne, *The Aftermath of Boxing,*
3 Psych. Med. 270-303 (1973);

(t)   A 1974 article on "Cerebral concussion and traumatic unconsciousness,
Correlation of experimental and clinical observations of blunt head
injuries" published in *Brain;*

(u)   A 1974 article on "Traumatic encephalopathy in a young boxer"
published in the *Lancet;*

(v)   A 1974 article on "Delayed recovery after mild head injury" was
published in the *Lancet;*

(w)   A 1975 article on "cumulative effect of concussion" was published
in the *Lancet;*

(x)   J. A. Corsellis, *Brain Damage in Sport,* 1 LANCET 401, 401 (1976)
(finding that the brain tissue of fifteen former boxers who sustained
multiple head trauma evidenced neuropathological signs of CTE);

(y)   A 1978 article on "Posttraumatic dementia" published in *Aging;*

(z)   J.C. Maroon, P.B. Steele, R. Berlin, *Football Head & Neck Injuries
- An Update,* 27 Clin. Nurosurg. 414-29 (1980);

(aa)  A 1981 article on "Association football injuries to the brain: a
preliminary report" published in the *British Journal of Sports
Medicine;*

(bb)  H Hugenholtz, MT Richard, *Return to Athletic Competition Following
Concussion,* 127(9) Can. Med. Assoc. J. 827-29 (1982);

(cc)  RC Cantu, *Guidelines to Return to Contact After Cerebral Concussion,*
14 The Physician and Sports Medicine 75-83 (1986);

(dd)  Daniel N. Kulund, The Injured Athlete 269 (1988).  A boxer may be
knocked unconscious by the pain of a shot to the eye or neck during a
match. See id.  Furthermore, a blow to the heart or solar plexus may block

-14-

COMPLAINT FOR DAMAGES

Ex A_000030

the flow of blood and render the fighter unconscious. Any punches to the temporal region may lead to a loss of balance or dizziness;

(ee)   JA Corsellis, *Boxing and the Brain*, 298 BMJ 105-109 (1989);

(ff)   James P. Kelly et al., *Concussion in Sports, Guidelines for the Prevention of Catastrophic Outcome*, 266 JAMA 2868 (1991);

(gg)   B.E. Leininger & J.S. Kreutzer, *Neuropsychological Outcome of Adults with Mild Traumatic Brain Injury: Implications for Clinical Practice and Research, in* REHABILITATION OF POST-CONCUSSIVE DISORDERS (L.J. Horn & N.D. Zasler eds., State of the Art Reviews, Physical Medicine and Rehabilitation, Hanley & Belfus, Inc. 1992);

(hh)   RC Cantu, *Cerebral Concussion in Sports*, 14(1) Sports Med. 64-74 (1992);

(ii)   RC Cantu, FO Mueller, *Catastrophic Football Injuries in the USA*, 2(3) Clin. J. Sports Med. 180-85 (1992); and

(jj)   Mild Traumatic Brain Injury Committee of the Head Injury Interdisciplinary Special Interest Group of the American Congress of Rehabilitation Medicine, *Definition of Mild Traumatic Injury*, 8 J. HEAD TRAUMA REHABIL. 86-87 (1993).

90.   In addition, the NFL's duty to protect the health and safety of its players is further underscored by the irrefutable evidence that the NFL has previously enacted the following non-exhaustive list of rules pertaining to players' health and safety:

(a)   In 1956, the NFL enacted a rule that prohibited the grabbing of any player's facemask, other than the ball carrier;

(b)   In 1962, the NFL enacted a rule that prohibited players from grabbing any player's facemask;

(c)   In 1976, the NFL enacted a rule that prohibited players from grabbing the facemask of an opponent. The penalty for an incidental grasp of the facemask was 5 yards. The penalty for twisting, turning, or pulling the facemask was 15 yards. A player could be ejected from the game if the foul is judged to be vicious and/or flagrant;

-15-

COMPLAINT FOR DAMAGES

(d)   In 1977, the NFL enacted a rule that prohibited players from slapping the head of another player during play.  This rule was referred to as the "Deacon Jones Rule", named after the Rams' defensive end who frequently used this technique;

(e)   In 1977, the NFL enacted a rule that prohibited Offensive Linemen from thrusting their hands into a defender's neck, face, or head;

(f)   In 1979, the NFL enacted a rule that prohibited players from using their helmets to butt, spear, or ram an opponent.  Pursuant to this rule, any player who used the crown or the top of his helmet unnecessarily will be called for unnecessary roughness;

(g)   In 1980, the NFL enacted rule changes that provided greater restrictions on contact in the area of the head, neck, and face;

(h)   In 1980, the NFL enacted rule changes that prohibited players from directly striking, swinging, or clubbing the head, neck, or face ("personal foul").  Beginning in 1980, a penalty could be called for such contact whether or not the initial contact was made below the neck area;

(i)   In 1982, the NFL enacted a rule change by which the penalty for incidental grabbing of a facemask by a defensive team was changed from 5 yards to an automatic first down plus a 5 yard penalty;

(j)   In 1983, the NFL enacted a rule that prohibited players from using a helmet as a weapon to strike or hit an opponent;

(k)   In 1988, the NFL enacted a rule that prohibited defensive players from hitting quarterbacks below the waist while they are still in the pocket.  (The rule was unofficially called the "Andre Waters Rule" based upon a hit that Waters placed on Los Angeles Rams quarterback Jim Everett in 1988); and

(l)   Following the 2004-2005 season, the NFL's Competition Committee reviewed video of the entire season and concluded that the horse-collar tackle resulted in six serious injuries.  On May 23, 2005, the NFL owners voted 27-5 to ban the tackle.  The ban states that a horse-collar tackle is an open-field tackle in which a defender uses the shoulder pads to immediately bring a ball carrier down.

-16-

**NFL FRAUDUENTLY CONCEALED THE LONG-TERM EFFECTS OF CONCUSSIONS**

91.     Instead of taking measures to actually protect its players from suffering long-term brain injuries, the NFL created the "Mild Traumatic Brain Injury Committee" in 1994 to purportedly study the effects of concussions on NFL players.

92.     The Mild Traumatic Brain Injury Committee was chaired by Dr. Elliot Pellman, a rheumatologist who is not certified as to brain injuries and/or concussions.

93.     After 14 years of purported studies, and after numerous medical journal articles were written by the NFL's Mild Traumatic Brain Injury Committee (the "NFL's Brain Injury Committee"), concluded that " [b]ecause a significant percentage of players returned to play in the same game [as they suffered a mild traumatic brain injury] and the overwhelming majority of players with concussions were kept out of football-related activities for less than 1 week, it can be concluded that mild TBI's in professional football are not serious injuries." *See* "Concussion in professional football: Summary of the research conducted by the National Football League's Committee on Mild Traumatic Brain Injury," *Neurosurg Focus* 21 (4):E12, 2006, E.J. Pellman and D.C. Viano.

94.     According to the NFL's own committee, the speedy return to play after suffering a concussion demonstrates that such players were not at a greater risk of suffering long-term brain injury.

95.     The NFL-funded study is completely devoid of logic and science.  More importantly, it is contrary to their Health and Safety Rules as well as 75 years of published medical literature on concussions.

96.     Between 2002 and 2005, a series of clinical and neuropathological studies performed by independent scientists and physicians demonstrated that multiple NFL induced-concussions cause cognitive problems such as depression, early on-set dementia and CTE and its related symptoms.

97.     In response to these studies, the NFL, to further a scheme of fraud and deceit, had members of the NFL's Brain Injury Committee deny knowledge of a link between concussion and

-17-

Ex A_000033

cognitive decline and claim that more time was needed to reach a definitive conclusion on the issue.

98.     When the NFL's Brain Injury Committee anticipated studies that would implicate causal links between concussion and cognitive degeneration it promptly published articles producing contrary findings, although false, distorted and deceiving as part of the NFL's scheme to deceive Congress, the players and the public at large.

99.     Between 2002 and 2007, Dr. Bennet Omalu examined the brain tissue of deceased NFL players including Mike Webster, Terry Long, Andrew Waters and Justin Strzelczyk.  Dr. Omalu in an article in *Neurosurgery* concluded that chronic traumatic encephalopathy ("CTE") triggered by multiple NFL concussions represented a partial cause of their deaths.

100.    In response to Dr. Omalu's article, the NFL acting thru the NFL's Brain Injury Committee, Drs. Ira Casson, Elliott Pellman and David Viano wrote a letter to the editor of *Neurosurgery* asking that Dr. Omalu's article be retracted.

101.    In 2005, a clinical study performed by Dr. Kevin Guskiewicz found that retired players who sustained three or more concussions in the NFL had a five-fold prevalence of mild cognitive impairment.  The NFL's Brain Injury Committee, Dr. Mark Lowell, promptly attacked the article by refusing to accept a survey of 2,400 former NFL players.

102.    Because of Congressional scrutiny and media pressure, the NFL scheduled a league-wide Concussion Summit for June 2007.  Unfortunately, the NFL in keeping with its scheme of fraud and deceit issued a pamphlet to players in August 2007, which stated: "there is no magic number for how many concussions is too many."

103.    When Boston University's Dr. Ann McKee found CTE in the brains of two more deceased NFL players in 2008, Dr. Ira Casson characterized each study as an "isolated incident" from which no conclusion could be drawn.

104.    At the October 2009 Congressional hearings of the House Judiciary Committee, committee member Linda Sanchez (D-CA) analogized the NFL's denial of a causal link between NFL concussion and cognitive decline to the Tobacco industry's denial of the link between cigarette consumption and ill health effects.

-18-

COMPLAINT FOR DAMAGES

105.     Since at least 2002, the NFL Committee has been on direct notice of multiple NFL head injuries contributing to cognitive decline in later life, yet it has never amended the 2007 NFL's Brain Injury Committee statement: "Current research with professional athletes has not shown that having more than one or two concussions leads to permanent problems... It is important to understand that there is no magic number for how many concussions is too many."

106.     As of June 2010, the NFL had yet to amend these inaccurate and misrepresentative statements to any Plaintiff or retiree.

## THE NFL ACKNOWLEDGES THEIR DUTY TO PROTECT AGAINST THE LONG-TERM RISK OF CONCUSSIONS

107.     On August 14, 2007, the NFL acknowledged its duty to players by enacting rules to protect them against the risks associated with repeated brain trauma.

108.     The NFL's 2007 concussion guidelines, many of which stemmed from an NFL conference in June of 2007 involving team trainers and doctors, were sent to all current players and other team personnel.

109.     The NFL's 2007 guidelines on concussion management include a whistle-blower provision for individuals to report concussions with the league so that a player with a head injury is not forced to practice or play against medical advice.

110.     The NFL's 2007 concussion guidelines also include an informational pamphlet provided to all current NFL players to aid in identifying symptoms of a concussion. This information was later withdrawn by one of the outside counsel of the NFL in a separate letter to its disability plan, as well as the NFL's August 14, 2007 press release denying that "more than one or two concussions leads to permanent problems".

111.     In a statement issued by the NFL on August 14, 2007, Roger Goodell, the Commissioner of the NFL, introduced the NFL's 2007 concussion guidelines by saying, "We want to make sure all NFL players, coaches and staff members are fully informed and take advantage of the most up-to-date information and resources as we continue to study the long-term impact of concussions."

COMPLAINT FOR DAMAGES

Ex A_000035

112.   The NFL's Commissioner also stated, "[b]ecause of the unique and complex nature of the brain, our goal is to continue to have concussions managed conservatively by outstanding medical personnel in a way that clearly emphasizes player safety over competitive concerns."

113.   The NFL's 2007 concussion guidelines provide when a player with a concussion can return to a game or practice.

114.   The NFL's 2007 concussion guidelines specifically mandate that a player should have no concussion symptoms and normal neurological test results before returning to play.

115.   For the past many decades until August 14, 2007, the NFL's duty to protect its players has never changed and has ever waned. The only change that occurred is that on August 14, 2007, the NFL finally and unequivocally acted upon its longstanding duty to protect its member players by implementing league-wide concussion guidelines.

116.   Importantly, the NFL themselves acknowledged that the 2007 guidelines were inadequate and insufficient. As a result, the NFL enacted more strict regulations to handle concussions starting in the 2009 season. Specifically, the NFL announced new rules on managing concussions requiring players who exhibit any significant concussion signs to be removed from a game or practice and be barred from returning the same day.

117.   Nevertheless, it was not until June of 2010 that the NFL warned any player of the long-term risks associated with multiple concussions, including dementia, memory loss, CTE and its related symptoms. The Riddell Defendants also failed to so warn active players until approximately the same time frame.

118.   As of today, the NFL Defendants and the Riddell Defendants have never warned any Plaintiff or retired player of the long-term health effects of concussions.

## THE DEFENDANTS' CONDUCT RISES BEYOND MERE NEGLIGENCE

119.   The aforementioned acts and omissions of the Defendants demonstrate that the Defendants acted with callous indifference to the rights and duties owed to Plaintiffs, all American Rules Football leagues and players and the public at large.

-20-

Ex A_000036

120.   The Defendants acted willfully, wantonly, egregiously, with reckless abandon, and with a high degree of moral culpability.

### DAVE and HEIDI PEAR

121.   Plaintiff Dave Pear was born on June 1, 1953 in Vancouver, Washington. He currently lives in Sammamish, Washington. He is married to Heidi Pear.

122.   Plaintiff Dave Pear played Defensive Tackle for the Baltimore Colts in 1975, Tampa Bay Buccaneers from 1976 to 1978 and Oakland Raiders from 1979 to 1980. He played in one Pro-Bowl and was a part of Super Bowl XV winning team.

123.   Plaintiff Dave Pear suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

124.   Plaintiff Dave Pear was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

125.   Plaintiff Dave Pear suffers from multiple past traumatic brain injuries with various symptoms including, but not limited to, memory loss, vertigo, sleeplessness and early on-set dementia.

### LEONARD and MARYANN MARSHALL

126.   Plaintiff Leonard Marshall was born on October 22, 1961 in Louisiana. He is married to Maryann and they currently reside in Boca Raton, Florida.

127.   Plaintiff Leonard Marshall played Defensive End from 1983 to 1992 for the New York Giants, for the New York Jets in 1993 and Washington Redskins in 1994. He was selected to the Pro-Bowl on three occasions. He won Super Bowl XXI and XXV.

128.   Plaintiff Leonard Marshall suffered multiple concussions in the NFL that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

-21-

COMPLAINT FOR DAMAGES

Ex A_000037

129.   Plaintiff Leonard Marshall was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

130.   Plaintiff Leonard Marshall suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including, but not limited to, memory loss, headaches, dizziness, and anxiety.

### BARRY and TERAY FOSTER

131.   Plaintiff Barry Foster was born on December 8, 1968.  He is married to Teray and they have 3 children, ages 19, 16 and 14 years old.  They currently reside in Colleyville, Texas.

132.   Plaintiff Barry Foster played from 1990 to 1994 as a Running Back for the Pittsburgh Steelers.  He was selected to two Pro Bowls and was selected the AFC Offensive Player of the year in 1992 when he rushed for a Pittsburgh Steeler season record of 1,690 rushing yards.

133.   Plaintiff Barry Foster suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

134.   Plaintiff Barry Foster was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

135.   Plaintiff Barry Foster suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing the following symptoms including but not limited to lack of concentration, memory loss, sleeplessness, chronic headaches and depression.

### ERIC W. and STACY MARTIN

136.   Plaintiff Eric W. Martin was born on November 8, 1961.  He is married to Stacy and they have 4 children ages 25, 20, 15 and 14 years old.  They currently reside in Richmond, Texas.

-22-

COMPLAINT FOR DAMAGES

Ex A_000038

137.   Plaintiff Eric W. Martin played Wide Receiver for the New Orleans Saints from 1985 to 1993 and the Kansas City Chiefs in 1994. He was selected to the Pro Bowl in 1988.

138.   Plaintiff Eric W. Martin suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

139.   Plaintiff Eric W. Martin was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

140.   Plaintiff Eric W. Martin suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing the following symptoms including but not limited to memory loss and headaches.

## LANCE SMITH

141.   Plaintiff Lance Smith was born on January 1, 1963. He has 3 children ages 25, 21 and 10 years old. He currently lives in Charlotte, North Carolina.

142.   Plaintiff Lance Smith played Offensive Guard from 1984 to 1993 for the St. Louis/Phoenix Cardinals and from 1994 to 1996 for the New York Giants.

143.   Plaintiff Lance Smith suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

144.   Plaintiff Lance Smith was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

145.   Plaintiff Lance Smith suffers from multiple past traumatic brain injuries affecting multiple areas of the brain and causing the following symptoms including but not limited to headaches and memory loss.

-23-

COMPLAINT FOR DAMAGES

## HENRY LAWRENCE

146.   Plaintiff Henry Lawrence was born on September 26, 1951 in Danville, Pennsylvania.  He currently lives in Palmetto, Florida.

147.   Plaintiff Henry Lawrence played from 1974 to 1986 for the Los Angeles/Oakland Raiders as an Offensive Lineman.  He was selected to two Pro Bowls and won three Super Bowls.

148.   Plaintiff Henry Lawrence suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

149.   Plaintiff Henry Lawrence was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

150.   Plaintiff Henry Lawrence suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including but not limited to headaches, sleep problems, memory loss and pain.

## ROBERT and MERITA SUCI

151.   Plaintiff Robert Suci was born on April 7, 1939.  He is married to Merita and they currently reside in Flint, Michigan.

152.   Plaintiff Robert Suci played from 1963 to 1965 for the Houston Oilers and the Boston Patriots as a Defensive Back.

153.   Plaintiff Robert Suci suffered multiple concussions that were improperly diagnosed and improperly treated during his career as a professional football player in the NFL.

154.   Plaintiff Robert Suci was not warned by the NFL, NFL Properties Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

-24-

COMPLAINT FOR DAMAGES

155.   Plaintiff Suci suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to mood swings, light-headedness, headaches, and memory loss.

## DEEMS and SUSAN MAY

156.   Plaintiff Deems May was born on March 6, 1969.  He is married to Susan.  They currently reside in Charlotte, North Carolina.

157.   Plaintiff Deems May played Tight End from 1992 to 1996 for the San Diego Chargers and from 1997 to 1999 for the Seattle Seahawks.

158.   Plaintiff Deems May suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

159.   Plaintiff Deems May was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

160.   Plaintiff Deems May suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to short term memory loss and headaches.

## ZEFROSS MOSS

161.   Plaintiff Zefross Moss was born on August 17, 1966.  He currently resides in Madison, Alabama.

162.   Plaintiff Zefross Moss was an Offensive Lineman who played from 1989 to 1994 for the Indianapolis Colts, from 1995 to 1996 for the Detroit Lions, and from 1997 to 1999 for the New England Patriots.

163.   Plaintiff Zefross Moss suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional player in the NFL.

-25-

COMPLAINT FOR DAMAGES

Ex A_000041

164.   Plaintiff Zefross Moss was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

165.   Plaintiff Zefross Moss suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to memory loss dizziness, headaches and depression.

## ANTONIO "DELL" and SUE MCGEE

166.   Plaintiff Dell McGee was born on September 7, 1972. He is currently married to Sue and they have one child who is 6 years old. They currently reside in Midland, Georgia.

167.   Plaintiff Dell McGee played Defensive Back from 1996 to 1998 for the Arizona Cardinals, and he played in 1999 for the Detroit Lions.

168.   Plaintiff Dell McGee suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

169.   Plaintiff Dell McGee was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

170.   Plaintiff Dell McGee suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to headaches, tingling in his head and short term memory loss.

## JOHN L. and LINDA OUTLAW

171.   Plaintiff John L. Outlaw was born on January 8, 1945. He is married to Linda. They currently reside in Columbia, Maryland.

172.   Plaintiff John L. Outlaw played from 1969 to 1972 for the New England Patriots and from 1973 to 1978 for the Philadelphia Eagles as a Defensive Back.

-26-

COMPLAINT FOR DAMAGES

173.   Plaintiff John L. Outlaw suffered repeated concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

174.   Plaintiff John L. Outlaw was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

175.   Plaintiff John L. Outlaw suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to short term memory loss, headaches, dizziness and blurry vision.

## BERNARD FORD

176.   Plaintiff Bernard Ford was born on February 27, 1966.  He has four children ages 27, 26, 25 and 11 years old.  He currently resides in Weston, Florida.

177.   Plaintiff Bernard Ford played from 1988 to 1989 for the Buffalo Bills, from 1989 to 1990 for the Dallas Cowboys, from 1990 to 1991 for the Houston Oilers, Green Bay Packers in 1992, Miami Dolphins in 1993, and in 1995 for the Philadelphia Eagles.  He was a Wide Receiver and Kick Return Specialist.

178.   Plaintiff Bernard Ford suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

179.   Plaintiff Bernard Ford was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

180.   Plaintiff Bernard Ford suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to headaches and memory loss.

-27-

COMPLAINT FOR DAMAGES

## JAMES and KELLEY VANWAGNER

181. Plaintiff James VanWagner was born on May 3 1955. He is married to Kelley. He currently resides in Rogue River, Oregon.

182. Plaintiff James VanWagner played from 1977 to 1979 as a Running Back for the New Orleans Saints.

183. Plaintiff James VanWagner suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

184. Plaintiff James VanWagner was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

185. Plaintiff James VanWagner suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to severe short term memory loss and dementia.

## BOBBY E, JR. and STEPHANIE ABRAMS

186. Plaintiff Bobby E. Abrams, Jr. was born on April 12, 1967 in Detroit, Michigan. He is married to Stephanie and they have 3 children ages 23, 20, and 17 years old. They currently reside in Montgomery, Alabama.

187. Plaintiff Bobby E. Abrams, Jr. played from 1990 to 1991 for the New York Giants, 1992 for the Cleveland Browns and New York Giants, from 1992 to 1993 for the Dallas Cowboys, from 1993 to 1994 for the Minnesota Vikings and from 1995 to 1997 for the New England Patriots. He was a Line Backer.

188. Plaintiff Bobby E. Abrams, Jr. suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

-28-

COMPLAINT FOR DAMAGES

189. Plaintiff Bobby E. Abrams, Jr. was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

190. Plaintiff Bobby E. Abrams, Jr. suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to headaches, short term memory loss, and pain.

## JOHNNY REMBERT

191. Plaintiff Johnny Rembert was born on January 19, 1961. He currently resides in Fleming Island, Florida.

192. Plaintiff Johnny Rembert played from 1983 to 1992 for the New England Patriots as a Line Backer. He was selected to the Pro Bowl two times.

193. Plaintiff Johnny Rembert suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

194. Plaintiff Johnny Rembert was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

195. Plaintiff Johnny Rembert suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to headaches and pain.

COMPLAINT FOR DAMAGES

Ex A_000045

## FRANCISCO "PACO" and DENISE CRAIG

196.   Plaintiff Francisco "Paco" Craig was born on February 2, 1965.  He is married to Denise and they currently reside in Moreno Valley, California.

197.   Plaintiff Francisco "Paco" Craig played in 1988 for the Detroit Lions, in 1989 for the Atlanta Falcons and 1990 for the LA Rams as a Wide Receiver.

198.   Plaintiff Francisco "Paco" Craig suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

199.   Plaintiff Francisco "Paco" Craig was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

200.   Plaintiff Francisco "Paco" Craig suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to headaches, short term memory loss, blurry vision, sleep problems, pain, depression, hearing difficulty and mood swings.

## JAMES and MARLENE ELROD

201.   Plaintiff James Elrod was born on May 25, 1954.  He is married to Marlene.  They currently reside in Tulsa, Oklahoma.

202.   Plaintiff James Elrod played for the Kansas City Chiefs from 1976 to 1978, the St. Louis Cardinals in 1979 and the Houston Oilers in 1979 as a Line Backer.

203.   Plaintiff James Elrod suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

204.   Plaintiff James Elrod was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

-30-

Ex A_000046

205.   Plaintiff James Elrod suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to short term memory loss and headaches.

**FRED and LINDSAY BARNETT**

206.   Plaintiff Fred Barnett was born on June 17, 1966.  He is married to Lindsay and they have 3 children ages 4 months and 10 year old twins.  They currently reside in Philadelphia, Pennsylvania.

207.   Plaintiff Fred Barnett played from 1990 to 1995 for the Philadelphia Eagles, and from 1996 to 1997 for the Miami Dolphins as a Wide Receiver.   He was selected to the Pro Bowl on one occasion.

208.   Plaintiff Fred Barnett suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

209.   Plaintiff Fred Barnett was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

210.   Plaintiff Fred Barnett suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to memory loss, vertigo and sleeping difficulties.

**KEITH HENDERSON**

211.   Plaintiff Keith Henderson was born on August 4, 1966.  He currently resides in Cartersville, Georgia.

212.   Plaintiff Keith Henderson played from 1989 to 1992 for the San Francisco 49ers and from 1992 to 1994 for the Minnesota Vikings as a Running Back.

-31-

Ex A_000047

213. Plaintiff Keith Henderson suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

214. Plaintiff Keith Henderson was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

215. Plaintiff Keith Henderson suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to memory loss, vision difficulties and headaches.

## JAMES PRUITT

216. Plaintiff James Pruitt was born on January 29, 1964. He currently resides in Boynton Beach, Florida.

217. Plaintiff James Pruitt played from 1986 to 1988 for the Miami Dolphins, from 1988 to 1989 for Indianapolis Colts, and from 1990 to 1991 for the Miami Dolphins as a Wide Receiver.

218. Plaintiff James Pruitt suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

219. Plaintiff James Pruitt was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

220. Plaintiff James Pruitt suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to short term memory loss, vertigo and headaches.

-32-

COMPLAINT FOR DAMAGES

## WENDELL and CARMEN TYLER

221.   Plaintiff Wendell Tyler was born on May 20, 1955 in Louisiana.  He is married to Carmen and they currently reside in Lancaster, California.

222.   Plaintiff Wendell Tyler played from 1977 to 1982 for the Los Angeles Rams and from 1983 to 1986 for the San Francisco 49ers as a Running Back.  He was selected to the Pro Bowl on one occasion.  He won Super Bowl XIX.

223.   Plaintiff Wendell Tyler suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

224.   Plaintiff Wendell Tyler was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

225.   Plaintiff Wendell Tyler suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to memory loss and mood swings.

## HORACE and TANGELA COPELAND

226.   Plaintiff Horace Copeland was born on January 2, 1971.  He is married to Tangela and they have four children ages 20, 14, 11 and 9 years old.  They currently reside in Spring Hill, Florida.

227.   Plaintiff Horace Copeland played from 1993 to 1998 for Tampa Bay Buccaneers, in 1998 for the Miami Dolphins and from 1999 to 2000 for the Oakland Raiders as a Wide Receiver.

227.   Plaintiff Horace Copeland suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

228.   Plaintiff Horace Copeland was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the

-33-

COMPLAINT FOR DAMAGES

league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

229. Plaintiff Horace Copeland suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to memory loss, headaches, and blurry vision.

### MICHAEL and DEBRA LUSH

230. Plaintiff Michael Lush was born on April 18, 1958. He is married to Debra and they currently reside in Orefield, Pennsylvania.

231. Plaintiff Michael Lush played as a Defensive Back in 1986 for the Minnesota Vikings and in 1987 for Atlanta Falcons. He was also a member of various teams training camps from 1981 to 1987 including the Philadelphia Eagles, New York Giants, Baltimore Colts and Chicago Bears.

232. Plaintiff Michael Lush suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

233. Plaintiff Michael Lush was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

234. Plaintiff Michael Lush suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to memory loss, loss of organization skills, depression, vertigo, headaches and mood swings.

### MICHAEL and KAREN GANN

235. Plaintiff Michael Gann was born on October 19, 1963. He is married to Karen and they currently reside in Roswell, Georgia.

236. Plaintiff Michael Gann played as a Defensive End from 1985 to 1993 for the Atlanta Falcons.

-34-

COMPLAINT FOR DAMAGES

237.   Plaintiff Michael Gann suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

238.   Plaintiff Michael Gann was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

239.   Plaintiff Michael Gann suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to short term memory loss, headaches, sleeplessness, anxiety attacks, and depression.

## TIMOTHY and CHELONDA BARNETT

240.   Plaintiff Timothy Barnett was born on April 19, 1967.  He is married to Chelonda and they currently reside in Kansas City, Missouri.

241.   Plaintiff Timothy Barnett played as a Wide Receiver for the Kansas City Chiefs from 1991 to 1993.

242.   Plaintiff Timothy Barnett suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

243.   Plaintiff Timothy Barnett was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

244.   Plaintiff Timothy Barnett suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to short term memory loss, headaches, mood swings and depression.

-35-

COMPLAINT FOR DAMAGES

Ex A_000051

## CALVIN and CHARESE WILLIAMS

245.   Plaintiff Calvin Williams was born on March 3, 1967.  He is married to Charese and they have three children ages 12, 11 and 6 years old.  They currently reside in Baltimore, Maryland.

246.   Plaintiff Calvin Williams played Wide Receiver for the Philadelphia Eagles from 1990 to 1996 and for the Baltimore Ravens in 1996.  He was selected to the Football News All-Rookie Team in 1990.

247.   Plaintiff Calvin Williams suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

248.   Plaintiff Calvin Williams was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

249.   Plaintiff Calvin Williams suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to short term memory loss and sleeplessness.


## DAVID SIMS

250.   Plaintiff David Sims was born on October 26, 1955.  He currently resides in Decatur, Georgia.

251.   Plaintiff David Sims played Running Back for the Seattle Seahawks from 1977 to 1980.

252.   Plaintiff David Sims suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

253.   Plaintiff David Sims was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-

-36-

COMPLAINT FOR DAMAGES

1 | mandated equipment did not protect him from such injury. This was a substantial factor in causing
2 | his current injury.

3 | 254. Plaintiff David Sims suffers from multiple past traumatic brain injuries affecting
4 | multiple areas of his brain and causing various symptoms including by not limited to short term
5 | memory loss, headaches and mood swings.

6 |

7 | **FRED and NERMA MCCRARY**

8 | 255. Plaintiff Fred McCrary was born on September 19, 1972. He is married to Nerma
9 | and they have two children ages 9 and 5. They currently reside in Canton, Georgia.

10 | 256. Plaintiff Fred McCrary played Fullback for the Philadelphia Eagles from 1995 to
11 | 1996, New Orleans Saints from 1997 to 1998, San Diego Chargers from 1999 to 2002, New
12 | England Patriots in 2003, Atlanta Falcons from 2004 to 2006 and Seattle Seahawks in 2007. He
13 | was a part of the winning team of Super Bowl XXXVIII.

14 | 257. Plaintiff Fred McCrary suffered multiple concussions that were improperly
15 | diagnosed and improperly treated throughout his career as a professional football player in the
16 | NFL.

17 | 258. Plaintiff Fred McCrary was not warned by the NFL, NFL Properties, Inc., or Riddell
18 | Defendants of the risk of long-term injury due to football-related concussions or that the league-
19 | mandated equipment did not protect him from such injury. This was a substantial factor in causing
20 | his current injury.

21 | 259. Plaintiff Fred McCrary suffers from multiple past traumatic brain injuries affecting
22 | multiple areas of his brain and causing various symptoms including by not limited to short term
23 | memory loss, headaches, vertigo, hearing loss, anxiety and depression.

24 |
25 |
26 |
27 |
28 |

-37-

COMPLAINT FOR DAMAGES

Ex A_000053

**ANTHONY MARSHALL**

260.    Plaintiff Anthony Marshall was born on April 16, 1970.  He currently resides in Mobile, Alabama.

261.    Plaintiff Anthony Marshall played Defensive Back for the Chicago Bears from 1994 to 1997, New York Jets in 1998 and Philadelphia Eagles in 1999.

262.    Plaintiff Anthony Marshall suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

263.    Plaintiff Anthony Marshall was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

264.    Plaintiff Anthony Marshall suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to short term memory loss and headaches.

**LEE and LISA ROUSON**

265.    Plaintiff Lee Rouson was born on October 18, 1962.  He is married to Lisa and they have four children.  They currently reside in Flanders, New Jersey.

266.    Plaintiff Lee Rouson played Running Back for the New York Giants from 1985 to 1990 and the Cleveland Browns in 1991.  He was on the winning teams for Super Bowl XXI an XXV.

267.    Plaintiff Lee Rouson suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

268.    Plaintiff Lee Rouson was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

-38-

COMPLAINT FOR DAMAGES

Ex A_000054

269.   Plaintiff Lee Rouson suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to short term memory loss and headaches.

### DANNY and LISA MILLER

270.   Plaintiff Danny Miller was born on March 24, 1966.  He is married to Lisa and they currently reside in Pittsburgh, Pennsylvania.

271.   Plaintiff Danny Miller played Defensive Back for the Atlanta Falcons from 1995 to 2002.

272.   Plaintiff Danny Miller suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

273.   Plaintiff Danny Miller was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

274.   Plaintiff Danny Miller suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to short term memory loss and depression.

### WADE and CATHERINE KEY

275.   Plaintiff Wade Key was born on October 14, 1946.  He is married to Catherine and they currently reside in Hondo, Texas.

276.   Plaintiff Wade Key played Offensive Lineman for the Philadelphia Eagles from 1969 to 1980.  He was named to the Philadelphia Eagles 75th Anniversary Team.

277.   Plaintiff Wade Key suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

278.   Plaintiff Wade Key was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-

-39-

COMPLAINT FOR DAMAGES

1  mandated equipment did not protect him from such injury.  This was a substantial factor in causing
2  his current injury.

3      279.   Plaintiff Wade Key suffers from multiple past traumatic brain injuries affecting
4  multiple areas of his brain and causing various symptoms including by not limited to memory loss
5  and headaches.

6

7                          **TONY and JANET DORSETT**

8      280.   Plaintiff Tony Dorsett was born on April 7, 1954.  He is married to Janet and they
9  currently reside in Texas.

10     281.   Plaintiff Tony Dorsett played Running Back for the Dallas Cowboys from 1977 to
11  1987 and the Denver Broncos in 1988.  He was a four time Pro Bowl Selection.  He won Super
12  Bowl XII.  He is a member of the Pro Football Hall of Fame.

13     282.   Plaintiff Tony Dorsett suffered multiple concussions that were improperly diagnosed
14  and improperly treated throughout his career as a professional football player in the NFL.

15     283.   Plaintiff Tony Dorsett was not warned by the NFL, NFL Properties, Inc., or Riddell
16  Defendants of the risk of long-term injury due to football-related concussions or that the league-
17  mandated equipment did not protect him from such injury.  This was a substantial factor in causing
18  his current injury.

19     284.   Plaintiff Tony Dorsett suffers from multiple past traumatic brain injuries affecting
20  multiple areas of his brain and causing various symptoms including by not limited to short term
21  memory loss, mood swings and depression.

22

23                             **EMANUEL MARTIN**

24     285.   Plaintiff Emanuel Martin was born on July 31, 1969.  His has six children.  He
25  currently resides in Fort Lauderdale, Florida.

26     286.   Plaintiff Emanuel Martin played Defensive Back for the Houston Oiler in 1993, and
27  the Buffalo Bills from 1996 to 1999.

28

COMPLAINT FOR DAMAGES

Ex A_000056

287.   Plaintiff Emanuel Martin suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

288.   Plaintiff Emanuel Martin was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

289.   Plaintiff Emanuel Martin suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to memory loss, blurred vision and headaches.

## DWIGHT HARRISON

290.   Plaintiff Dwight Harrison was born on October 12, 1948.  He currently resides in Beaumont, Texas.

291.   Plaintiff Dwight Harrison played Defensive Back for the Denver Broncos from 1971 to 1972, the Buffalo Bills from 1972 to 1977, Baltimore Colts from 1978 to 1979, and the Oakland Raiders in 1980.

292.   Plaintiff Dwight Harrison suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

293.   Plaintiff Dwight Harrison was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

294.   Plaintiff Dwight Harrison suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to dementia and post traumatic stress disorder.

-41-

COMPLAINT FOR DAMAGES

Ex A_000057

**HARRY and ANDREA CRUMP**

295.    Plaintiff Harry Crump was born on June 18, 1940.  He is married to Andrea Crump and they currently reside in Newport, Rhode Island.

296.    Plaintiff Harry Crump played Running Back for the New England Patriots from 1961 to 1962.

297.    Plaintiff Harry Crump suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

298.    Plaintiff Harry Crump was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

299.    Plaintiff Harry Crump suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to Dementia and Depression.

**SANTANA and MONIQUE DOTSON**

300.    Plaintiff Santana Dotson was born on December 19, 1969.  He is married to Monique and has four children ages 15, 14, 10 and 4.  They currently reside in Houston, Texas.

301.    Plaintiff Santana Dotson played Defensive End for the Tampa Bay Buccaneers from 1992 to 1995, the Green Bay Packers from 1996 to 2001 and the Washington Redskins in 2002.

302.    Plaintiff Santana Dotson suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

303.    Plaintiff Santana Dotson was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

-42-

COMPLAINT FOR DAMAGES

304.   Plaintiff Santana Dotson suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to early on-set dementia.

**STEFON and PATRICE ADAMS**

305.   Plaintiff Stefon Adams was born on August 11, 1963. He is married to Patrice. They have two children ages 19 and 17. They currently reside in Stone Mountain, Georgia.

306.   Plaintiff Stefon Adams played from 1985 to 1989 for the Los Angeles Raiders and in 1990 for the Cleveland Browns and Miami Dolphins as a Defensive Back.

307.   Plaintiff Stefon Adams suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

308.   Plaintiff Stefon Adams was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

309.   Plaintiff Stefon Adams suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to headaches, pain and short term memory loss.

**LORENZO and MARCIA HAMPTON**

310.   Plaintiff Lorenzo Hampton was born on March 12, 1962. He is married to Marcia and has two children ages 16 and 13. They currently reside in Boca Raton, Florida.

311.   Plaintiff Lorenzo Hampton played from 1985 to 1990 for the Miami Dolphins as a Running Back.

312.   Plaintiff Lorenzo Hampton suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

-43-

COMPLAINT FOR DAMAGES

313.   Plaintiff Lorenzo Hampton was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

314.   Plaintiff Lorenzo Hampton suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to headaches and short term memory loss.

## LORENZO DAVIS

315.   Plaintiff Lorenzo Davis was born on February 12, 1968.  He currently resides in Davie, Florida.

316.   Plaintiff Lorenzo Davis played in 1990 for the Pittsburgh Steelers as a Wide Receiver.

317.   Plaintiff Lorenzo Davis suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

318.   Plaintiff Lorenzo Davis was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

319.   Plaintiff Lorenzo Davis suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to headaches.

## EMANUEL and KENDRA KING

320.   Plaintiff Emanuel King was born on August 15, 1963.  He is married to Kendra and they currently reside in Mobile, Alabama.

321.   Plaintiff Emanuel King played from 1985 to 1988 for the Cincinnati Bengals and from 1989 to 1991 for the Oakland Raiders as a Defensive End.

-44-

COMPLAINT FOR DAMAGES

Ex A_000060

322. Plaintiff Emanuel King suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

323. Plaintiff Emanuel King was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

324. Plaintiff Emanuel King suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to headaches, memory loss, blurred vision and vertigo.


**WILLIE and EARLINE RICHARDSON**

325. Plaintiff Willie Richardson was born on November 17, 1939. He is married to Earline. They currently reside in Jackson, Mississippi.

326. Plaintiff Willie Richardson played from 1963 to 1969, Miami Dolphins from 1970 to 1971 and the Baltimore Colts in 1971 as a Wide Receiver.

327. Plaintiff Willie Richardson suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

328. Plaintiff Willie Richardson was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

329. Plaintiff Willie Richardson suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to headaches, memory loss, sleeping problems, and hearing problems.

-45-

COMPLAINT FOR DAMAGES

Ex A_000061

## MARC and TANANJALYN BOUTTE

330.   Plaintiff Marc Boutte was born on July 25, 1969.  He is married to Tananjalyn and they have one child age 11.  They currently reside in Missouri City, Texas.

331.   Plaintiff Marc Boutte played Defensive Tackle for the L.A. Rams from 1992 to 1993 and for the Washington Redskins from 1994 to 1999.

332.   Plaintiff Marc Boutte suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

333.   Plaintiff Marc Boutte was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

334.   Plaintiff Marc Boutte suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to headaches, memory loss and depression.

## REGGIE MOORE

335.   Plaintiff Reggie Moore was born on March 23, 1968.  He currently resides in Houston, Texas.

336.   Plaintiff Reggie Moore played for the New York Jets from 1991 to 1992 and for the Los Angeles Rams in 1993.

337.   Plaintiff Reggie Moore suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

338.   Plaintiff Reggie Moore was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

-46-

COMPLAINT FOR DAMAGES

Ex A_000062

339.   Plaintiff Reggie Moore suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to short term memory loss.

## LIONAL DALTON

340.   Plaintiff Lional Dalton was born on February 21, 1975.  He has two children ages 12 and 9 years old.  He currently resides in Fort Lauderdale, Florida.

341.   Plaintiff Lional Dalton played Defensive Tackle for the Baltimore Raves from 1998 to 2001, Denver Broncos in 2002, Washington Redskins in 2003, Kansas City Chiefs from 2004-2006, and Houston Texans in 2006.  He was part of Super Bowl XXXV.

342.   Plaintiff Lional Dalton suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

343.   Plaintiff Lional Dalton was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury.  This was a substantial factor in causing his current injury.

344.   Plaintiff Lional Dalton suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to memory loss, headaches, blurry vision, and ringing in his ears.

## BRODERICK and YVONNE THOMAS

345.   Plaintiff Broderick Thomas was born on February 20, 1967.  He is married to Yvonne and has two children.  They currently reside in Pearland, Texas.

346.   Plaintiff Broderick Thomas played from 1989 to 1992 for Tampa Bay Buccaneers, in 1994 for the Detroit Lions, in 1995 for the Minnesota Vikings, and from 1996 to 1999 for the Dallas Cowboys.

-47-

COMPLAINT FOR DAMAGES

347. Plaintiff Broderick Thomas suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

348. Plaintiff Broderick Thomas was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

349. Plaintiff Broderick Thomas suffers from multiple past traumatic brain injuries affecting multiple areas of his brain and causing various symptoms including by not limited to memory loss, depression and anxiety.

## MARTY CARTER

350. Plaintiff Marty Carter was born on December 17, 1968. He currently lives in Hogansville, Georgia.

351. Plaintiff Marty Carter played Defensive Back from 1991 to 1994 for the Tampa Bay Buccaneers, from 1995 to 1998 for the Chicago Bears, from 1999 to 2001 for the Atlanta Falcons, and for 2001 for the Detroit Lions.

352. Plaintiff Marty Carter suffered multiple concussions that were improperly diagnosed and improperly treated throughout his career as a professional football player in the NFL.

353. Plaintiff Marty Carter was not warned by the NFL, NFL Properties, Inc., or Riddell Defendants of the risk of long-term injury due to football-related concussions or that the league-mandated equipment did not protect him from such injury. This was a substantial factor in causing his current injury.

354. Plaintiff Marty Carter suffers from multiple past traumatic brain injuries affecting multiple areas of the brain and causing the following symptoms including but not limited to headaches and memory loss.

-48-

COMPLAINT FOR DAMAGES

## FIRST CAUSE OF ACTION

## NEGLIGENCE- Monopolist

## (As Against the NFL)

355.  Plaintiffs incorporate by reference paragraphs 1 through 354 as if fully set forth herein at length.

356.  The NFL, by and through its monopoly power, has historically had a duty to invoke rules that protect the health and safety of its players and the public.  Nevertheless, by its actions, it has violated California Business and Professional Code Section 17001 by engaging in practices that restrain the development of good science on the problem and epidemic of concussion injuries.

357.  As a monopoly, the NFL has a duty to protect the health and safety of its players, as well as the public at large.

358.  Throughout the history of the NFL, the NFL organization has consistently breached its duty to protect the health and safety of its players by failing to enact rules, policies and regulations to best protect its players.

359.  The NFL breached its duty to its players, including Plaintiffs, to use ordinary care to protect the physical and mental health of players by failing to implement standardized post-concussion guidelines by failing to enact rules to decrease the risk of concussions during games or practices, and by failing to implement mandatory rules that would prevent a player who suffered a mild traumatic brain injury from re-entering a football game and being placed at further risk of injury.

360.  Throughout its many years, the NFL has repeatedly established its duty to protect the health and safety of its players when known and foreseeable risk exists.  Until August 14, 2007, the NFL failed to create and implement league-wide guidelines concerning the treatment and monitoring of players who suffer concussive brain injuries.

361.  It has been well established since 1928 that repeated blows to the head can lead to CTE, commonly known as "punch drunk syndrome."  Punch Drunk Syndrome has been prevalent in boxers who have repeatedly suffered concussions.

-49-

Ex A_000065

362.    Despite the fact that other sporting associations exist, such as the National Hockey League and the World Boxing Association, which have decades ago established standardized association-wide concussion management rules, until August 14, 2007, the NFL failed to establish any guidelines or policies to protect the mental health and safety of its players.

363.    Nonetheless, it took the NFL until June of 2010 to finally acknowledge the long-term risks associated with concussions, including dementia, memory loss, CTE and its related symptoms.  At that time, the NFL warned active players of those risks.  To date, the NFL has never warned any past players, including Plaintiffs, or the public of the long- term brain injury caused from concussions.

364.    The NFL's failure to fulfill its duty to protect its players, the plaintiffs and the public, include, but are not limited to, the following failures:

(a)    Failure to institute acclimation requirements or procedures to ensure proper acclimation of the NFL players before they participate in practices or games;

(b)    Failure to regulate and monitor practices, games, equipment, and medical care so as to minimize the long-term risks associated with concussive brain injuries suffered by the NFL players, including Plaintiffs;

(c)    Failure to require that an adequate concussive brain injury history be taken of NFL players;

(d)    Failure to ensure accurate diagnosis and recording of concussive brain injury so the condition can be treated in an adequate and timely manner;

(e)    Failure to invoke league-wide guidelines, policies, and procedures regarding the identification and treatment of concussive brain injury, and the return to play insofar as such matters pertain to concussive brain injury;

(f)    Failure to properly inform the public and other American Rules Football leagues and players of the health risks associated with concussive injury;

(g)    Failure to license and approve the best equipment available that will reduce the risk of concussive brain injury; and

-50-

COMPLAINT FOR DAMAGES

Ex A_000066

(h)     Failure to warn of the harm of repetitive concussion injuries.

365.    The NFL breached its duty to protect the health and safety of its players by subjecting NFL players to an increased risk of concussive brain injury.

366.    The NFL failed to provide complete, current, and competent information and directions to NFL athletic trainers, physicians, and coaches regarding concussive brain injuries and its prevention, symptoms, and treatment.

367.    If the NFL would have taken the necessary steps to oversee and protect the NFL players, including Plaintiffs, by developing and implementing necessary guidelines, policies, and procedures; providing reasonably safe helmets; and educating and training all persons involved with the NFL Teams in the recognition, prevention, and treatment of concussive brain injuries, then NFL players, such as Plaintiffs, would not have suffered from the subject condition or the effects of that condition, would have recovered more rapidly, or would not have suffered long-term brain injuries.

368.    Under all of the above circumstances, it was foreseeable that the NFL's violating its duties would cause or substantially contribute to the personal injuries suffered by Plaintiffs.

369.    The NFL committed acts of omission and commission, which collectively and severally, constituted negligence.  The NFL's negligence was a proximate and producing cause of the personal injuries and other damages suffered by Plaintiffs.

370.    As a result of the personal injuries, Plaintiffs are entitled to damages, as alleged herein or allowed by law, from the NFL in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.

## SECOND CAUSE OF ACTION:
## NEGLIGENCE
### (As Against the NFL)

371.    Plaintiffs incorporate by reference paragraphs 1 through 370 of this Complaint as if fully set forth herein at length.

Ex A_000067

372.    The NFL has historically assumed an independent tort duty to invoke rules that protect the health and safety of its players, but it has violated Section 323 of the Restatement (Second) of Torts as adopted by the Courts in California.

373.    Throughout the history of the NFL, the NFL organization has consistently exercised its duty to protect the health and safety of its players by implementing rules, policies and regulations in an attempt to best protect its players.

374.    By enacting rules to protect the health and safety of its players, the NFL has repeatedly confirmed its duty to take reasonable and prudent actions to protect the health and safety of its players when known and foreseeable risks exist.

375.    The NFL breached its duty to its players, including Plaintiffs, to use ordinary care to protect the physical and mental health of players by implementing standardized post-concussion guidelines and by failing to implement mandatory rules that would prevent a player who suffered a mild traumatic brain injury from re-entering a football game or practice.

376.    Throughout the many years that the NFL has repeatedly established its duty to protect the health and safety of its players when known and foreseeable risks exist, until August 14, 2007, the NFL failed to create and implement league-wide guidelines concerning the treatment and monitoring of players who suffer a concussive brain injury during a game.

377.    It has been well established since 1928 that repeated blows to the head can lead to CTE, commonly known as "punch drunk syndrome." Punch Drunk Syndrome has been prevalent in boxers who have repeatedly suffered concussions.

378.    Despite the fact that other sporting associations exist, such as the World Boxing Association, which have decades ago established standardized association-wide concussion management rules, until August 14, 2007, the NFL failed to establish any guidelines or policies to protect the mental health and safety of its players.

379.    The NFL's failure to fulfill its assumed duty to protect its players includes but is not limited to the following failures:

(a)    Failure to institute acclimation requirements or procedures to ensure proper acclimation of the NFL players before they participate in practices or games;

-52-

COMPLAINT FOR DAMAGES

Ex A_000068

(b)    Failure to regulate and monitor practices, games, rules, equipment, and medical care so as to minimize the long-term risks associated with concussive brain injuries suffered by the NFL players, including Plaintiffs;

(c)    Failure to require that an adequate concussive brain injury history be taken of NFL players;

(d)    Failure to ensure accurate diagnosis and recording of concussive brain injury so the condition can be treated in an adequate and timely manner;

(e)    Failure to invoke league-wide guidelines, policies, and procedures regarding the identification and treatment of concussive brain injury, and the return to play insofar as such matters pertain to concussive brain injury; and,

(f)    Failure to license and approve the best equipment available that will reduce the risk of concussive brain injury.

380.    The NFL breached its assumed duty to protect the health and safety of its players by subjecting NFL players to an increased risk of concussive brain injury.

381.    The NFL failed to provide complete, current, and competent information and directions to NFL athletic trainers, physicians, and coaches regarding concussive brain injuries and its prevention, symptoms, and treatment.

382.    If the NFL would have taken the necessary steps to oversee and protect the NFL players, including Plaintiffs, by developing and implementing necessary guidelines, policies, and procedures; providing reasonably safe helmets; and educating and training all persons involved with the NFL Teams in the recognition, prevention, and treatment of concussive brain injuries, then NFL players, such as Plaintiffs, would not have suffered from the subject condition or the effects of that condition, would have recovered more rapidly, or would not have suffered long-term brain damage, dementia, and depression related to dementia and CTE.

383.    Under all of the above circumstances, it was foreseeable that the NFL's violations of its duties would cause or substantially contribute to the personal injuries suffered by the Plaintiffs.

COMPLAINT FOR DAMAGES

Ex A_000069

384.    The NFL committed acts of omission and commission, which collectively and severally, constituted negligence. The NFL's negligence was a proximate and producing cause of the personal injuries and other damages suffered by Plaintiff.

385.    As a result of the personal injuries of Plaintiffs, they are entitled to damages, as alleged herein or allowed by law, from the NFL in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.

## THIRD CAUSE OF ACTION:

## FRAUD

## (As Against the NFL)

386.    Plaintiffs incorporate by reference paragraphs 1 through 385 of this Complaint as if fully set forth herein at length.

387.    From 2005 through June of 2010, the NFL made through its "Mild Traumatic Brain Injury Committee" and others, its agents, material misrepresentations to its players, former players, the Congress and the public at large that there was no link between concussions and later life cognitive/brain injury, including CTE and its related symptoms.

388.    The persons who made the misrepresentations as agents of the NFL and the NFL knew they were false.

389.    The persons who made the misrepresentations as agents of the NFL and the NFL intended to defraud, among others, the Plaintiffs in this action.

390.    The Plaintiffs, among others, justifiably relied on these misrepresentations to their detriment in getting care for their injuries.

391.    The Plaintiffs, among others, were damaged by these misrepresentations. Among other things, they require increased home care, loss of consortium, loss of employment, medical costs and pain and suffering.

392.    As a result of the personal injuries of Plaintiffs, they are entitled to damages, as alleged herein or allowed by law, from the NFL in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.

-54-

COMPLAINT FOR DAMAGES

## FOURTH CAUSE OF ACTION

### NEGLIGENCE

### (As Against NFL Properties)

393.    Plaintiffs incorporate by reference paragraphs 1 through 392 as if fully set forth herein at length.

394.    NFL Properties breached its duty to ensure that the equipment it licensed and approved were of the highest possible quality and sufficient to protect the NFL players, including Plaintiffs, from the risk of concussive brain injuries.

395.    NFL Properties breached its duty by licensing the Riddell Defendants' helmets, and approving and/or requiring the use of the helmets for the NFL players, knowing or having reason to know that the helmets were negligently and defectively designed and/or manufactured.

396.    As a result of these breaches by NFL Properties, Plaintiffs suffer personal injuries as a result the long-term health effects of concussive brain injuries.

397.    As a result of the personal injuries of Plaintiffs, Plaintiffs are entitled to damages from NFL Properties, LLC in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.00.

## FIFTH CAUSE OF ACTION

### STRICT LIABILITY FOR DESIGN DEFECT

### (As Against Riddell Defendants)

398.    Plaintiffs incorporate by reference paragraphs 1 through 397 as if set fully herein at length.

399.    At the time the helmets were designed, manufactured, sold, and distributed by the Riddell Defendants, the helmets were defective in design, unreasonably dangerous, and unsafe for their intended purpose because they did not provide adequate protection against the foreseeable risk of concussive brain injury.  The design defect includes, but is not limited to the following:

(a)    Negligently failing to design the subject helmet with a safe means

-55-

Ex A_000071

of attenuating and absorbing the foreseeable forces of impact in order to minimize and/or reduce the forces and energy directed to the player's head;

(b) Negligently designing the subject helmet with a shock attenuating system which was not safely configured;

(c) Negligently failing to properly and adequately test the helmet model;

(d) Other acts of negligence that may be discovered during the course of this matter; and

(e) Failing to warn Plaintiffs that their helmets would not protect against the long-term health consequences of concussive brain injury.

400. The defective design and unreasonably dangerous condition were a proximate and producing cause of the personal injuries suffered by the Plaintiffs and other damages, including but not limited to, economic damages and non-economic damages.

401. The Riddell Defendants are strictly liable for designing a defective and unreasonably dangerous product and for failing to warn which were proximate and producing causes of the personal injuries and other damages including, but not limited to, economic damage as alleged herein. A safer alternative design was economically and technologically feasible at the time the product left the control of the Riddell Defendants.

402. As a result of the personal injuries of Plaintiffs, Plaintiffs are entitled to damages from Riddell Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.00.

## SIXTH CAUSE OF ACTION

### (STRICT LIABILITY FOR MANUFACTURING DEFECT)

#### (As Against Riddell Defendants)

403. Plaintiffs incorporate by reference paragraphs 1 through 402 as if set forth herein at length.

-56-

COMPLAINT FOR DAMAGES

Ex A_000072

404.    At the time the helmets were designed, manufactured, sold and distributed by the Riddell Defendants, the helmets were defective in their manufacturing and unreasonably dangerous and unsafe for their intended purpose because they did not provide adequate protection against the foreseeable risk of concussive brain injury. The Riddell Defendants' failure to design the helmets to design and manufacturing specifications resulted in, among other things, the following:

(a)    Negligently failing to manufacture the subject helmet with a safe means of attenuating and absorbing the foreseeable forces of impact in order to minimize and/or reduce the forces and energy directed to the player's head;

(b)    Negligently manufacturing the subject helmet with a shock attenuating system which was not safely configured;

(c)    Negligently failing to properly and adequately inspect and/or test the helmet model;

(d)    Other acts of negligence that may be discovered during the course of this matter; and

(e)    Failure to warn Plaintiffs that its helmets wouldn't protect against concussive brain injury.

405.    The manufacturing defect was a proximate and producing cause of the personal injuries suffered by Plaintiffs and other damages, including but not limited to, economic damages and non-economic damages.

406.    The Riddell Defendants are strictly liable for manufacturing and placing in the stream of commerce a defective and unreasonably dangerous product which was a proximate and producing cause of the personal injuries and other damages, including but not limited to, economic damages and non-economic damages. A safe alternative design was economically and technologically feasible at the time the product left the control of the Riddell Defendants.

-57-

COMPLAINT FOR DAMAGES

Ex A_000073

407. As a result of the personal injuries of Plaintiffs, Plaintiffs are entitled to damages from Riddell Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.00.

## SEVENTH CAUSE OF ACTION

### FAILURE TO WARN

### (As Against Riddell Defendants)

408. Plaintiffs incorporate by reference paragraphs 1 through 407 as if set forth herein at length.

409. The Riddell Defendants failed to provide necessary and adequate safety and instructional materials and warnings of the risk and means available to reduce and/or minimize the risk of concussive brain injuries while playing football.

410. The Riddell Defendants failed to provide necessary and adequate information, warnings, and/or instructional materials regarding the fact that other model helmets provided greater shock attenuation from blows to the head area.

411. The Riddell Defendants' failure to warn caused the Plaintiffs' personal injuries.

412. As a result of the personal injuries of Plaintiffs, Plaintiffs are entitled to damages from the Riddell Defendants, in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.00.

## EIGHTH CAUSE OF ACTION

### NEGLIGENCE

### (As Against Riddell Defendants)

413. Plaintiffs incorporate by reference paragraphs 1 through 412 as if set forth herein at length.

414. The Riddell Defendants should have been well aware that since 1928 repeated blows to the head can lead to CTE, commonly known as "punch-drunk syndrome".

-58-

COMPLAINT FOR DAMAGES

415.    The Riddell Defendants breached their duty of reasonable care by failing to provide necessary and adequate safety and instructional materials and warnings of the risk and means available to reduce and/or minimize the risk of concussive brain injuries while playing football using their helmets.

416.    As a result of the Riddell Defendants' breach of duty, Plaintiffs have sustained permanent injury.

417.    For the personal injuries of Plaintiffs, Plaintiffs are entitled to damages from the Riddell Defendants in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.00.

## NINTH CAUSE OF ACTION

## LOSS OF CONSORTIUM

### (As Against All Defendants)

418.    Plaintiffs incorporate by reference paragraphs 1 through 417 as if set forth herein at length.

419.    As a direct and proximate result of the carelessness, negligence and recklessness of all Defendants and of the aforesaid injuries to their husbands, the wife Plaintiffs have been damaged as follows:

    a.    They have been and will continue to be deprived of the services, society and companionship of their husbands;

    b.    They have been and will continue to be required to spend money for medical care and household care for the treatment of their husbands; and

    c.    They have been and will continue to be deprived of the earnings of their husbands.

-59-

Ex A_000075

420.   As a result of the injuries to Plaintiffs, wife Plaintiffs are entitled to damages from the Defendants, in an amount reasonably anticipated to exceed the jurisdictional minimum of $25,000.00.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For compensatory and general damages according to proof;
2. For special and incidental damages according to proof;
3. For punitive damages according to proof;
4. For costs of the proceedings herein; and
5. For all such other and further relief as the Court deems just.

DATED:  August 3, 2011                              GIRARDI|KEESE


BY: _____
      THOMAS V. GIRARDI
      Attorney for Plaintiffs


## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all claims so triable.

DATED:  August 3, 2011                              GIRARDI|KEESE


BY: _____
      THOMAS V. GIRARDI
      Attorney for Plaintiffs

-60-

COMPLAINT FOR DAMAGES

Ex A_000076

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

**FILED**
Superior Court of California
County of Los Angeles

AUG 09 2011

John A. Clarke, Executive Officer/ Clerk

By _____ , Deputy
TAMISHA MENEFEE

COURTHOUSE ADDRESS: 6230 SYLMAR AVE, RM. 107, VAN NUYS, CALIF. 91401

PLAINTIFF:

DEFENDANT:

CASE NUMBER: **LC094453**

## NOTICE OF CASE MANAGEMENT CONFERENCE

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

Date: 12-21-11   Time: 8:30   Dept: NWT

NOTICE TO DEFENDANT:   THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.).

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 7.13, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: ___JOHN A. CLARKE AUG 03 2011___     _____
                                              Judicial Officer

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☐ by depositing in the United States mail at the courthouse in ___Van Nuys___, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

___JOHN A. CLARKE AUG 03 2011___     JOHN A. CLARKE, Executive/Officer Clerk

Dated: _____     By _____
                               Deputy Clerk

## NOTICE OF
## CASE MANAGEMENT CONFERENCE

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter Seven

EX A 000077

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:** NATIONAL FOOTBALL LEAGUE; NFL
*(AVISO AL DEMANDADO):* PROPERTIES LLC; RIDDELL, INC. d/b/a
RIDDELL SPORTS GROUP, INC., ALL AMERICAN SPORTS
CORPORATION, d/b/a RIDDELL/ALL AMERICAN; RIDDELL SPORTS
GROUP, INC, EASTON-BELL SPORTS, INC.; EASTON-BELL SPORTS,
LLC; EB SPORTS CORP.; and RBG HOLDINGS CORP.; and JOHN DOES 1
through 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:** DAVE PEAR and HEIDI PEAR,
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* his wife; LEONARD
MARSHALL and MARYANN MARSHALL, his wife; BARRY FOSTER and
TERAY FOSTER, his wife; (continued)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**FILED**
Superior Court of California
County of Los Angeles

AUG 03 2011

John A. Clarke, Executive Officer/Clerk

By _____, Deputy
TAMISHA MENEFEE

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* C 094453 |

LOS ANGELES SUPERIOR COURT
6230 Sylmar Avenue
Van Nuys, CA 91401
Northwest District

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
THOMAS V. GIRARDI, SBN 36603          213/977-0211     213/481-1554
GIRARDI KEESE
1126 Wilshire Boulevard
Los Angeles, CA 90017-1904

| | | |
|---|---|---|
| DATE: *(Fecha)* JOHN A. CLARKE  AUG 0 3 2011 | Clerk, by *(Secretario)* _T. Menefee_ | , Deputy *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

Ex A_000078

SUM-200(A)

| SHORT TITLE:   DAVE PEAR, et al. v. NFL, et al. | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

➔   This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔   If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons:  "Additional Parties Attachment form is attached."

List additional parties (Check only one box.  Use a separate page for each type of party.):

[x] Plaintiff      [ ] Defendant      [ ] Cross-Complainant      [ ] Cross-Defendant

ERIC W. MARTIN and STACY MARTIN, his wife; LANCE SMITH; HENRY LAWRENCE; ROBERT SUCI and MERITA SUCI, his wife; DEEMS MAY and SUSAN MAY, his wife; ZEFROSS MOSS; ANTONIO MCGEE and SUE MCGEE, his wife; JOHN L. OUTLAW and LINDA OUTLAW, his wife; BERNARD FORD; JAMES VANWAGNER and KELLEY VANWAGNER; BOBBY E. ABRAMS, Jr. and STEPHANIE ABRAMS, his wife; JOHNNY REMBERT; FRANCISCO CRAIG and DENISE CRAIG, his wife; JAMES ELROD and MARLENE ELROD, his wife; FRED BARNETT and LINDSAY BARNETT, his wife; KEITH HENDERSON; JAMES PRUITT; WENDELL TYLER and CARMEN TYLER, his wife; HORACE COPELAND and TANGELA COPELAND, his wife; MICHAEL LUSH and DEBRA LUSH, his wife; MICHAEL GANN and KAREN GANN, his wife; TIMOTHY BARNETT and CHELONDA BARNETT, his wife; CALVIN WILLIAMS and CHARESE WILLIAMS, his wife; DAVID SIMS; FRED MCCRARY and NERMA MCCRAY his wife; ANTHONY MARSHALL; LEE ROUSON and LISA ROUSON, his wife; DANNY MILLER and LISA MILLER, his wife; WADE KEY and CATHERINE KEY, his wife; TONY DORSETT and JANET DORSETT, his wife; EMANUEL MARTIN; DWIGHT HARRISON; HARRY CRUMP and ANDREA CRUMP, his wife; SANTANA DOTSON and MONIQUE DOTSON, his wife; STEFON ADAMS and PATRICE ADAMS, his wife; LORENZO HAMPTON and MARCIA HAMPTON, his wife; LORENZO DAVIS; EMANUEL KING and KENDRA KING, his wife; WILLIE RICHARDSON and EARLINE RICHARDSON, his wife; MARC BOUTTE and TANANJALYN, his wife; REGGIE MOORE; LIONAL DALTON; BRODERICK THOMAS and YVONNE THOMAS, his wife; MARTY CARTER,

Plaintiffs,

Page 1 of 1

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

ADDITIONAL PARTIES ATTACHMENT
Attachment to Summons

Legal
Solutions
Plus

Ex A_000079

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>THOMAS V. GIRARDI, SBN 36603<br>GIRARDI KEESE<br>1126 Wilshire Boulevard<br>Los Angeles, California 90017-1904<br><br>TELEPHONE NO.: 213/977-0211     FAX NO. (Optional): 213/481-1554<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Plaintiffs | FOR COURT USE ONLY<br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>AUG 0 9 2011<br><br>John A. Clarke, Executive Officer/ Clerk<br>By _____ , Deputy<br>TAMISHA MANUEL |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 6230 Sylmar Avenue
MAILING ADDRESS: Same as above
CITY AND ZIP CODE: Van Nuys, CA 91401
BRANCH NAME: Northwest District

| PLAINTIFF/PETITIONER: DAVE PEAR, et al., | CASE NUMBER:<br>LC094453 |
|---|---|
| DEFENDANT/RESPONDENT: NATIONAL FOOTBALL LEAGUE, et al., | JUDICIAL OFFICER: |
| **NOTICE OF RELATED CASE** | DEPT.: |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Vernon Maxwell, et al. v. National Football League, et al.
   b. Case number: BC465842
   c. Court: ☐ same as above
      ☒ other state or federal court *(name and address):* Los Angeles Superior Court, Central District, 111 North Hill Street, Los Angeles, CA 90012
   d. Department: D-51
   e. Case type: ☐ limited civil ☒ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date: July 19, 2011
   g. Has this case been designated or determined as "complex?" ☐ Yes ☒ No
   h. Relationship of this case to the case referenced above *(check all that apply):*
      ☐ involves the same parties and is based on the same or similar claims.
      ☒ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
      ☐ involves claims against, title to, possession of, or damages to the same property.
      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
         ☐ Additional explanation is attached in attachment 1h
   i. Status of case:
      ☒ pending
      ☐ dismissed ☐ with ☐ without prejudice
      ☐ disposed of by judgment

2. a. Title:
   b. Case number:
   c. Court: ☐ same as above
      ☐ other state or federal court *(name and address):*

   d. Department:

Form Approved for Optional Use
Judicial Council of California
CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Legal
Solutions
Plus

Page 1 of 3
Cal. Rules of Court, rule 3.300

Ex A_000080

CM-015

| PLAINTIFF/PETITIONER: DAVE PEAR, et al., | CASE NUMBER: |
| DEFENDANT/RESPONDENT: NATIONAL FOOTBALL LEAGUE, et al., | |

2. *(continued)*
  e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:

  f. Filing date:

  g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

  h. Relationship of this case to the case referenced above *(check all that apply):*
  ☐ involves the same parties and is based on the same or similar claims.
  ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
  ☐ involves claims against, title to, possession of, or damages to the same property.
  ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
  ☐ Additional explanation is attached in attachment 2h

  i. Status of case:
  ☐ pending
  ☐ dismissed ☐ with ☐ without prejudice
  ☐ disposed of by judgment

3. a. Title:
  b. Case number:
  c. Court: ☐ same as above
  ☐ other state or federal court *(name and address):*

  d. Department:

  e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other *(specify)*:

  f. Filing date:

  g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

  h. Relationship of this case to the case referenced above *(check all that apply):*
  ☐ involves the same parties and is based on the same or similar claims.
  ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
  ☐ involves claims against, title to, possession of, or damages to the same property.
  ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
  ☐ Additional explanation is attached in attachment 3h

  i. Status of case:
  ☐ pending
  ☐ dismissed ☐ with ☐ without prejudice
  ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: August 3, 2011

THOMAS V. GIRARDI
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

BY FAX

**NOTICE OF RELATED CASE**

Ex A_000081

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address): | FOR COURT USE ONLY |
|---|---|
| THOMAS V. GIRARDI   SBN: 36603<br>GIRARDI AND KEESE<br>1126 WILSHIRE BLVD.  LOS ANGELES, CA 900170000<br>TELEPHONE NO.: (213) 977-0211   FAX NO.(Optional): (213) 481-1554<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Plaintiff: | FILED<br>LOS ANGELES SUPERIOR COURT<br>SEP 27 2011<br>JOHN A. CLARKE, CLERK<br>BY R. MONTERROSA, DEPUTY |

| Los Angeles County Superior Court - Van Nuys Courthouse East |
|---|
| STREET ADDRESS: 6230 Sylmar Ave. |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: Van Nuys, CA 91401 |
| BRANCH NAME: Northwest |

| PLAINTIFF/PETITIONER: PECK, ET AL. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: NFL, ET AL. | LC094453 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: 2011211 |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   - a. ☒ summons
   - b. ☒ complaint
   - c. ☒ Alternative Dispute Resolution (ADR) package
   - d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   - e. ☐ cross-complaint
   - f. ☒ other *(specify documents):*
     **Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location;Notice of Taking Status Conference; Status Conference; Order to Show Cause Re Dismissal; Notice of Related Case**

3. a. Party served *(specify name of party as shown on documents served):*
   **NATIONAL FOOTBALL LEAGUE**

   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **DOUG PAOLETTI - PERSON AUTHORIZED TO ACCEPT SERVICE**

4. Address where the party was served: NFL HEADQUARTERS
   280 PARK AVE.
   NEW YORK, NY 10017

5. I served the party *(check proper box)*
   a. ☒ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 9/12/2011   (2) at *(time):* 4:33 PM
   b. ☐ by substituted service. On *(date):*  at *(time):*  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

      (1) ☐ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

      (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):* from *(city):*   or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a declaration of diligence stating actions taken first to attempt personal service.

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10
POS010-1/LA109081312

EX A_000082

| PETITIONER: PECK, ET AL. | CASE NUMBER: |
|---|---|
| RESPONDENT: NFL, ET AL. | LC094453 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date):*                                  *(2) from (city):*

   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.) *(Code Civ. Proc., § 415.30.)*

   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify):*
   c. ☐ as occupant.
   d. ☒ On behalf of *(specify):* **NATIONAL FOOTBALL LEAGUE**
     under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
   a. Name: **GERALD MURRAY - JANNEY AND JANNEY ATTORNEY SERVICE, INC.**
   b. Address: **1545 WILSHIRE BLVD., #311  LOS ANGELES, CA 90017**
   c. Telephone number: **(213) 628-6338**
   d. The fee for service was: $ **118.75**
   e. I am:
     (1) ☒ not a registered California process server.
     (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
     (3) ☐ registered California process server:
       (i) ☐ owner   ☐ employee     ☐ independent contractor.
       (ii) Registration No.: **LIC# 0872285**
       (iii) County:

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

   Date: **9/14/2011**

**JANNEY AND JANNEY ATTORNEY SERVICE, INC.**
**1545 WILSHIRE BLVD., #311**
**LOS ANGELES, CA 90017**
**(213) 628-6338**

_____
     **GERALD MURRAY**                                       (SIGNATURE)
  (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

Ex A_000083

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| THOMAS V. GIRARDI<br>GIRARDI AND KEESE<br>1126 WILSHIRE BLVD.  LOS ANGELES, CA 900170000<br>TELEPHONE NO.: (213) 977-0211      FAX NO.(Optional):   (213) 481-1554 SBN: 36803 | |

E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Plaintiff;

Los Angeles County Superior Court - Van Nuys Courthouse East

STREET ADDRESS: 6230 Sylmar Ave.

MAILING ADDRESS:

CITY AND ZIP CODE: Van Nuys, CA 91401

BRANCH NAME: Northwest

LOS...

SEP 27 2011

| PLAINTIFF/PETITIONER: PECK, ET AL. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: NFL, ET AL. | LC094453 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No. |
|---|---|
| | 2011211 |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a. ☒ summons
   b. ☒ complaint
   c. ☒ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet  *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☒ other *(specify documents):*
      **Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location;Notice of Taking Status Conference; Status Conference; Order to Show Cause Re Dismissal; Notice of Related Case**

3. a. Party served *(specify name of party as shown on documents served):*
   **NFL PROPERTIES, LLC**

   b. ☒  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      **SCOTT LaSCALA - MANAGING AGENT/AUTHORIZED TO ACCEPT SERVICE**

4. Address where the party was served: **CORPORATION TRUST CENTER**
   **1209 ORANGE ST.**
   **WILMINGTON, DE 19801**

5. I served the party *(check proper box)*
   a. ☒  by personal service.  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 9/9/2011     (2) at *(time):* **2:50 PM**

   b. ☐  by substituted service. On *(date):*  at *(time):*  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

      *(1)* ☐  (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him of her of the general nature of the papers.

      *(2)* ☐  (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party.  I informed him or her of the general nature of the papers.

      *(3)* ☐  (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him of her of the general nature of the papers.

      *(4)* ☐  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*  from *(city):*                          or ☐  a declaration of mailing is attached.

      *(5)* ☐  I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

PROOF OF SERVICE OF SUMMONS

Code of Civil Procedure, § 417.10
POS010-1/LA109081321

Ex A_000084

| PETITIONER: **PECK, ET AL.** | CASE NUMBER: |
| RESPONDENT: **NFL, ET AL.** | LC094463 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid.

   (1) on *(date):*                            (2) from *(city):*

   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.
b. ☐ as the person sued under the fictitious name of *(specify):*
c. ☐ as occupant.
d. ☒ On behalf of *(specify):* **NFL PROPERTIES, LLC**
   under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☒ other: **Limited Liability Company** |

7. **Person who served papers**
a. Name: **Daniel Newcomb - Janney and Janney Attorney Service, Inc.**
b. Address: **1545 Wilshire Blvd., #311  Los Angeles, CA 90017**
c. Telephone number: **(213) 628-6338**
d. The fee for service was: **$ 118.75**
e. I am:

   (1) ☒ not a registered California process server.
   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☐ registered California process server:
     (i) ☐ owner     ☐ employee     ☐ independent contractor.
     (ii) Registration No.:
     (iii) County:

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: **9/14/2011**

**Janney and Janney Attorney Service, Inc.**
**1545 Wilshire Blvd., #311**
**Los Angeles, CA 90017**
**(213) 628-6338**

_____
      **Daniel Newcomb**
   (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

_____
                (SIGNATURE)

Ex A_000085

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State number, and address): | FOR COURT USE ONLY |
|---|---|
| THOMAS V. GIRARDI          SBN: 36603<br>GIRARDI AND KEESE<br>1126 WILSHIRE BLVD.  LOS ANGELES, CA 900170000<br><br>TELEPHONE NO.: (213) 977-0211       FAX NO.(Optional):   (213) 481-1554<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): Plaintiff: | SEP 2 7 2011 |

| Los Angeles County Superior Court - Van Nuys Courthouse East |
|---|
| STREET ADDRESS: 6230 Sylmar Ave. |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: Van Nuys, CA 91401 |
| BRANCH NAME: Northwest |

| PLAINTIFF/PETITIONER:  PECK, ET AL. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  NFL, ET AL. | LC094463 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:  2011211 |
|---|---|

(Separate proof of service is required for each party served.)

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☒ summons
   b. ☒ complaint
   c. ☒ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet  (served in complex cases only)
   e. ☐ cross-complaint
   f. ☒ other (specify documents):
      **Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location;Notice of Taking Status Conference; Status Conference; Order to Show Cause Re Dismissal; Notice of Related Case**

3. a. Party served (specify name of party as shown on documents served):
   **ALL AMERICAN SPORTS CORPORATION, D/B/A/ RIDDELL/ ALL AMERICAN**

   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) (specify name and relationship to the party named in item 3a):
      **PAUL MATHEWS - MANAGING AGENT/AUTHORIZED TO ACCEPT SERVICE**

4. Address where the party was served:  CORPORATION SERVICE COMPANY
   2711 CENTERVILLE RD., # 400
   WILMINGTON, DE 19808

5. I served the party (check proper box)
   a. ☒ by personal service.  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date): 9/9/2011    (2) at (time): 3:30 PM
   b. ☐ by substituted service. On (date):  at (time):  I left the documents listed in item 2 with or
      In the presence of (name and title or relationship to person indicated in item 3b):

      (1) ☐ (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him of her of the general nature of the papers.

      (2) ☐ (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party.  I informed him or her of the general nature of the papers.

      (3) ☐ (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him of her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on (date):  from (city):                              or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a declaration of diligence stating actions taken first to attempt personal service.

Form Approved for Mandatory Use
Judicial Council of California
POS-C10 [Rev. January 1, 2007]

PROOF OF SERVICE OF SUMMONS

Code of Civil Procedure, § 417.10

POS010-1/LA109081326
Ex A_000086

| PETITIONER: PECK, ET AL. | CASE NUMBER: |
|---|---|
| RESPONDENT: NFL, ET AL. | LC094453 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*               (2) *from (city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.
b. ☐ as the person sued under the fictitious name of *(specify):*
c. ☐ as occupant.
d. ☒ On behalf of *(specify):* **ALL AMERICAN SPORTS CORPORATION, D/B/A RIDDELL/ ALL AMERICAN**
    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
  a. Name: **Daniel Newcomb - Janney and Janney Attorney Service, Inc.**
  b. Address: **1545 Wilshire Blvd., #311  Los Angeles, CA 90017**
  c. Telephone number: **(213) 628-6338**
  d. The fee for service was: $ **68.75**
  e. I am:
    (1) ☒ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ registered California process server:
      (i) ☐ owner    ☐ employee    ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: **9/14/2011**

**Janney and Janney Attorney Service, Inc.**
**1545 Wilshire Blvd., #311**
**Los Angeles, CA 90017**
**(213) 628-6338**

_____
        **Daniel Newcomb**
   (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                (SIGNATURE)

Ex A_000087

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State number, and address):*<br>THOMAS V. GIRARDI   SBN: 38603<br>GIRARDI AND KEESE<br>1126 WILSHIRE BLVD.   LOS ANGELES, CA 900170000 | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: **(213) 977-0211**   FAX NO. *(Optional):*   **(213) 481-1554** | |

E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* **Plaintiff:**

SEP 27 2011

Los Angeles County Superior Court - Van Nuys Courthouse East

STREET ADDRESS: **6230 Sylmar Ave.**
MAILING ADDRESS:
CITY AND ZIP CODE: **Van Nuys, CA 91401**
BRANCH NAME: **Northwest**

| PLAINTIFF/PETITIONER:   PECK, ET AL. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:   NFL, ET AL. | LC094453 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:   **2011211** |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] summons
   b. [X] complaint
   c. [X] Alternative Dispute Resolution (ADR) package
   d. [ ] Civil Case Cover Sheet   *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [X] other *(specify documents):*
      **Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location;Notice of Taking Status Conference; Status Conference; Order to Show Cause Re Dismissal; Notice of Related Case**
3. a. Party served *(specify name of party as shown on documents served):*
   **EASTON- BELL SPORTS, LLC.**

   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **PAUL MATHEWS - MANAGING AGENT/AUTHORIZED TO ACCEPT SERVICE**

4. Address where the party was served:   **CORPORATION SERVICE COMPANY**
   **2711 CENTERVILLE RD., # 400**
   **WILMINGTON, DE 19808**

5. I served the party *(check proper box)*
   a. [X] by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **9/9/2011**   (2) at *(time):* **3:30 PM**

   b. [ ] by substituted service. On *(date):*   at *(time):*   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*   from *(city):*   or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

PROOF OF SERVICE OF SUMMONS

Code of Civil Procedure, § 417.10

POS010-1/LA109081333

Ex A_000088

| PETITIONER: **PECK, ET AL.** | CASE NUMBER: |
|---|---|
| RESPONDENT: **NFL, ET AL.** | LC094453 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                 *(2) from (city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☒ On behalf of *(specify):* **EASTON- BELL SPORTS, LLC.**
    under the following Code of Civil Procedure section:

    ☐ 416.10 (corporation)            ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)       ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)            ☐ 415.46 (occupant)
                                    ☒ other: **LIMITED LIABILITY COMPANY**

7. **Person who served papers**
  a. Name: **Daniel Newcomb - Janney and Janney Attorney Service, Inc.**
  b. Address: **1545 Wilshire Blvd., #311  Los Angeles, CA 90017**
  c. Telephone number: **(213) 628-6338**
  d. The fee for service was: $ **68.75**
  e. I am:

    (1) ☒ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ registered California process server:
        (i) ☐ owner    ☐ employee    ☐ independent contractor.
        (ii) Registration No.:
        (iii) County:

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal** and I certify that the foregoing is true and correct.

    Date: **9/14/2011**

**Janney and Janney Attorney Service, Inc.**
**1545 Wilshire Blvd., #311**
**Los Angeles, CA 90017**
**(213) 628-6338**

      **Daniel Newcomb**                                         
  (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)            (SIGNATURE)

Ex A_000089

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| THOMAS V. GIRARDI                                                SBN: 36603<br>GIRARDI AND KEESE<br>1126 WILSHIRE BLVD.  LOS ANGELES, CA 900170000<br>   TELEPHONE NO.: **(213) 977-0211**          FAX NO.*(Optional):*     **(213) 481-1554**<br>E-MAIL ADDRESS *(Optional):*<br>   ATTORNEY FOR *(Name):* **Plaintiff** | SEP 2 7 2011 |

| Los Angeles County Superior Court - Van Nuys Courthouse East | |
|---|---|
|    STREET ADDRESS: **6230 Sylmar Ave.** | |
|    MAILING ADDRESS: | |
|    CITY AND ZIP CODE: **Van Nuys, CA 91401** | |
|    BRANCH NAME: **Northwest** | |

| PLAINTIFF/PETITIONER:  **PECK, ET AL.** | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  **NFL, ET AL.** | LC094453 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No:   **2011211** |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:

   a. ☒ summons
   b. ☒ complaint
   c. ☒ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet  *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☒ other *(specify documents):*
   **Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Taking
   Status Conference; Status Conference; Order to Show Cause Re Dismissal; Notice of Related Case**

3. a. Party served *(specify name of party as shown on documents served):*
   **EB SPORTS CORP.**

   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under
   item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **PAUL MATHEWS - MANAGING AGENT/AUTHORIZED TO ACCEPT SERVICE**

4. Address where the party was served: **CORPORATION SERVICE COMPANY
   2711 CENTERVILLE RD., # 400
   WILMINGTON, DE 19808**

5. I served the party *(check proper box)*
   a. ☒ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to
   receive service of process for the party (1) on *(date):* **9/9/2011**   (2) at *(time):* **3:30 PM**

   b. ☐ by substituted service. On *(date):*  at *(time):*  I left the documents listed in item 2 with or
   in the presence of *(name and title or relationship to person indicated in item 3b):*

   *(1)* ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the
   person to be served. I informed him of her of the general nature of the papers.

   *(2)* ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of
   abode of the party. I informed him or her of the general nature of the papers.

   *(3)* ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
   address of the person to be served, other than a United States Postal Service post office box. I informed him of
   her of the general nature of the papers.

   *(4)* ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the
   place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on
   *(date):*  from *(city):*  or ☐ a declaration of mailing is attached.

   *(5)* ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | PROOF OF SERVICE OF SUMMONS | Code of Civil Procedure, § 417.10 |
|---|---|---|

POS010-1/LA109081333A

Ex A_000090

| PETITIONER: PECK, ET AL. | CASE NUMBER: |
| --- | --- |
| RESPONDENT: NFL, ET AL. | LC094453 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                             (2) *from (city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☒ On behalf of *(specify):* EB SPORTS CORP.
      under the following Code of Civil Procedure section:

| | | |
| --- | --- | --- |
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) | |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) | |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) | |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) | |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) | |
| | ☐ other: | |

7. **Person who served papers**
  a. Name: **Daniel Newcomb - Janney and Janney Attorney Service, Inc.**
  b. Address: **1545 Wilshire Blvd., #311  Los Angeles, CA 90017**
  c. Telephone number: **(213) 628-6338**
  d. The fee for service was: **$ 68.75**
  e. I am:

    (1) ☒ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ registered California process server:
      (i) ☐ owner      ☐ employee      ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: **9/14/2011**

**Janney and Janney Attorney Service, Inc.**
**1545 Wilshire Blvd., #311**
**Los Angeles, CA 90017**
**(213) 628-6338**

_____
    **Daniel Newcomb**
  (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

_____
        (SIGNATURE)

Ex A_000091

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| **THOMAS V. GIRARDI**   SBN: 36— GIRARDI AND KEESE 1126 WILSHIRE BLVD.  LOS ANGELES, CA 900170000 | |

TELEPHONE NO. **(213) 977-0211**       FAX NO. *(Optional):*   **(213) 481-1554**
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* Plaintiff:

**Los Angeles County Superior Court - Van Nuys Courthouse East**
STREET ADDRESS: 6230 Sylmar Ave.
MAILING ADDRESS:
CITY AND ZIP CODE: **Van Nuys, CA 91401**
BRANCH NAME: **Northwest**

| PLAINTIFF/PETITIONER: PECK, ET AL. | CASE NUMBER |
|---|---|
| DEFENDANT/RESPONDENT: NFL, ET AL. | LC094453 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.   **2011211** |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] summons
   b. [X] complaint
   c. [X] Alternative Dispute Resolution (ADR) package
   d. [ ] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [X] other *(specify documents):*
      **Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location;Notice of Taking Status Conference; Status Conference; Order to Show Cause Re Dismissal; Notice of Related Case**
3. a. Party served *(specify name of party as shown on documents served):*
   **EASTON- BELL SPORTS, INC.**

   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **BECKY DeGEORGE - PERSON AUTHORIZED TO ACCEPT SERVICE**
4. Address where the party was served:  **CSC LAWYERS**
   **2730 GATWAY OAKS DR., # 100**
   **SACRAMENTO, CA 95833**
5. I served the party *(check proper box)*
   a. [X] by personal service.  I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 9/9/2011   (2) at *(time):* 3:19 PM
   b. [ ] by substituted service. On *(date):*   at   *(time):*   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

      *(1)* [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served.  I informed him of her of the general nature of the papers.

      *(2)* [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party.  I informed him or her of the general nature of the papers.

      *(3)* [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box.  I informed him of her of the general nature of the papers.

      *(4)* [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*   from *(city):*   or [ ] a declaration of mailing is attached.

      *(5)* [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10
POS010-1/LA109081332

EX A  000092

| PETITIONER: **PECK, ET AL.** | CASE NUMBER: |
|---|---|
| RESPONDENT: **NFL, ET AL.** | LC094453 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):*    (2) from *(city):*

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.
b. ☐ as the person sued under the fictitious name of *(specify):*
c. ☐ as occupant.
d. ☒ On behalf of *(specify):* **EASTON- BELL SPORTS, INC.**

under the following Code of Civil Procedure section:

☒ 416.10 (corporation)   ☐ 415.95 (business organization, form unknown)
☐ 416.20 (defunct corporation)   ☐ 416.60 (minor)
☐ 416.30 (joint stock company/association)   ☐ 416.70 (ward or conservatee)
☐ 416.40 (association or partnership)   ☐ 416.90 (authorized person)
☐ 416.50 (public entity)   ☐ 415.46 (occupant)
   ☐ other:

7. **Person who served papers**
a. Name: **GARRY DICK - JANNEY & JANNEY ATTORNEY SERVICE**
b. Address: **1545 WILSHIRE BLVD., STE 311  LOS ANGELES, CA 90017**
c. Telephone number: **(213) 628-6338**
d. **The fee** for service was: **$ 102.50**
e. I am:

(1) ☐ not a registered California process server.
(2) ☐ exempt from registration under Business and Professions Code section 22350(b).
(3) ☒ registered California process server:
    (i) ☐ owner ☐ employee   ☒ **independent contractor.**
    (ii) Registration No.: **08-013**
    (iii) County: **PLACER**

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **9/14/2011**

**JANNEY & JANNEY ATTORNEY SERVICE**
**1545 WILSHIRE BLVD., STE 311**
**LOS ANGELES, CA 90017**
**(213) 628-6338**

_____
**GARRY DICK**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

_____
(SIGNATURE)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address)* | | FOR COURT USE ONLY |
|---|---|---|
| THOMAS V. GIRARDI          SBN: 36603 | | |

THOMAS V. GIRARDI          SBN: 36603
GIRARDI AND KEESE
1126 WILSHIRE BLVD.  LOS ANGELES, CA 900170000

TELEPHONE NO: **(213) 977-0211**          FAX NO *(Optional)*:  **(213) 481-1554**

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*:  **Plaintiff:**

**Los Angeles County Superior Court - Van Nuys Courthouse East**

STREET ADDRESS: **6230 Sylmar Ave.**

MAILING ADDRESS:

CITY AND ZIP CODE: **Van Nuys, CA 91401**

BRANCH NAME: **Northwest**

FILED
LOS ANGELES SUPERIOR COURT
SEP 27 2011
JOHN A. CLARKE, CLERK
BY L. MUNOZ, DEPUTY

PLAINTIFF/PETITIONER:  **PECK, ET AL.**

DEFENDANT/RESPONDENT:  **NFL, ET AL.**

CASE NUMBER:
**LC094453**

Ref. No. or File No.:
**2011211**

| PROOF OF SERVICE OF SUMMONS |
|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☒ summons
   b. ☒ complaint
   c. ☒ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet  *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☒ other *(specify documents):*
   **Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Taking Status Conference; Status Conference; Order to Show Cause Re Dismissal;Notice of Related Case**

3. a. Party served *(specify name of party as shown on documents served):*
   **RIDDELL, INC., D/B/A RIDDELL SPORTS GROUP, INC.**

   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   **DEANNA DILLON - PERSON AUTHORIZED TO ACCEPT SERVICE**

4. Address where the party was served:  **ILLINOIS CORPORATION SERVICE**
   **801 ADLAI STEVENSON DR.**
   **SPRINGFIELD, IL 62703**

5. I served the party (check proper box)
   a. ☒ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **9/12/2011**  (2) at *(time):* **2:20 PM**
   b. ☐ by substituted service. On *(date):*  at  *(time):*  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

   (1) ☐  (business) a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

   (2) ☐  (home) a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐  (physical address unknown) a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.

   (4) ☐  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*  from *(city):*                     or ☐ a declaration of mailing is attached.

   (5) ☐  I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10
POS010-1/LA109081324

Ex A_000094

| PETITIONER: PECK, ET AL. | CASE NUMBER: |
| --- | --- |
| RESPONDENT: NFL, ET AL. | LC094453 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                          *(2) from (city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgment of Receipt.) (Code Civ. Proc., § 415.30.)*

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☒ On behalf of *(specify):* RIDDELL, INC., D/B/A RIDDELL SPORTS GROUP, INC.
    under the following Code of Civil Procedure section:

| | |
| --- | --- |
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
  a. Name: **GREG WILLING - JANNEY AND JANNEY ATTORNEY SERVICE, INC.**
  b. Address: **1545 WILSHIRE BLVD., #311  LOS ANGELES, CA 90017**
  c. Telephone number: **(213) 628-6338**
  d. The fee for service was: $ **118.75**
  e. I am:
    (1) ☒ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ registered California process server:
      (i) ☐ owner     ☐ employee     ☐ independent contractor.
      (ii) Registration No.: 129-261847
      (iii) County:

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

    Date: **9/14/2011**

**JANNEY AND JANNEY ATTORNEY SERVICE, INC.**
**1545 WILSHIRE BLVD., #311**
**LOS ANGELES, CA 90017**
**(213) 628-6338**

<u>    GREG WILLING    </u>                        (SIGNATURE)
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

Ex A_000095

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| **THOMAS V. GIRARDI**               SBN: 36603<br>**GIRARDI AND KEESE**<br>**1126 WILSHIRE BLVD.  LOS ANGELES, CA 900170000**<br><br>TELEPHONE NO.: **(213) 977-0211**        FAX NO. *(Optional):*    **(213) 481-1554**<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):*  **Plaintiff:** | *(stamp)* SEP 27 2011 |

| **Los Angeles County Superior Court - Van Nuys Courthouse East** | |
|---|---|
| STREET ADDRESS: **6230 Sylmar Ave.** | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE: **Van Nuys, CA 91401** | |
| BRANCH NAME: **Northwest** | |

| PLAINTIFF/PETITIONER:  PECK, ET AL. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  NFL, ET AL. | **LC094453** |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:  **2011211** |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☒ summons
   b. ☒ complaint
   c. ☒ Alternative Dispute Resolution (ADR) package
   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ cross-complaint
   f. ☐ other *(specify documents):*
      **Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location;Notice of Taking Status Conference; Status Conference; Order to Show Cause Re Dismissal; Notice of Related Case**

3. a. Party served *(specify name of party as shown on documents served):*
   **RIDDELL SPORTS GROUP, INC.**

   b. ☒  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      **PAUL MATHEWS - MANAGING AGENT/AUTHORIZED TO ACCEPT SERVICE**

4. Address where the party was served:  **CORPORATION SERVICE COMPANY**<br>**2711 CENTERVILLE RD., # 400**<br>**WILMINGTON, DE 19808**

5. I served the party *(check proper box)*
   a. ☒  by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* **9/9/2011**    (2) at *(time):* **3:30 PM**
   b. ☐  by substituted service. On *(date):*  at  *(time):*  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

      *(1)* ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

      *(2)* ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      *(3)* ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him of her of the general nature of the papers.

      *(4)* ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*  from *(city):*                              or ☐ a declaration of mailing is attached.

      *(5)* ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10<br>POS010-1/LA109081329A |
|---|---|---|

Ex A_000096

| PETITIONER: PECK, ET AL. | CASE NUMBER: |
|---|---|
| RESPONDENT: NFL, ET AL. | LC094463 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):*  (2) from *(city):*

(3) ☐ with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.
b. ☐ as the person sued under the fictitious name of *(specify):*
c. ☐ as occupant.
d. ☒ On behalf of *(specify):* **RIDDELL SPORTS GROUP, INC.**
under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
a. Name: **Daniel Newcomb - Janney and Janney Attorney Service, Inc.**
b. Address: **1545 Wilshire Blvd., #311  Los Angeles, CA 90017**
c. Telephone number: **(213) 628-6338**
d. The fee for service was: **$ 118.75**
e. I am:

(1) ☒ not a registered California process server.
(2) ☐ exempt from registration under Business and Professions Code section 22350(b).
(3) ☐ registered California process server:
(i) ☐ owner  ☐ employee  ☐ independent contractor.
(ii) Registration No.:
(iii) County:

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: **9/14/2011**

**Janney and Janney Attorney Service, Inc.**
**1545 Wilshire Blvd., #311**
**Los Angeles, CA 90017**
**(213) 628-6338**

_____
**Daniel Newcomb**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

_____
(SIGNATURE)

Ex A_000097

POS-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*<br>**THOMAS V. GIRARDI**   SBN: 36603<br>**GIRARDI AND KEESE**<br>**1126 WILSHIRE BLVD.   LOS ANGELES, CA 900170000**<br><br>TELEPHONE NO.: (213) 977-0211       FAX NO. *(Optional)*:   (213) 481-1554<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: **Plaintiff:** | *FOR COURT USE ONLY*<br><br>SEP 27 2011 |

| |
|---|
| **Los Angeles County Superior Court - Van Nuys Courthouse East**<br>STREET ADDRESS: **6230 Sylmar Ave.**<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: **Van Nuys, CA 91401**<br>BRANCH NAME: **Northwest** |

| | |
|---|---|
| PLAINTIFF/PETITIONER: **PECK, ET AL.**<br><br>DEFENDANT/RESPONDENT: **NFL, ET AL.** | CASE NUMBER:<br>LC094453 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>**2011211** |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] summons
   b. [X] complaint
   c. [X] Alternative Dispute Resolution (ADR) package
   d. [ ] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [X] other *(specify documents)*:
      **Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Taking Status Conference; Status Conference; Order to Show Cause Re Dismissal; Notice of Related Case**
3. a. Party served *(specify name of party as shown on documents served)*:
      **RBG HOLDINGS CORP.**

   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
      **PAUL MATHEWS  - MANAGING AGENT/AUTHORIZED TO ACCEPT SERVICE**
4. Address where the party was served: **CORPORATION SERVICE CO.**
      **2711 CENTERVILLE RD., #400**
      **WILMINGTON, DE 19808**
5. I served the party *(check proper box)*
   a. [X] by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: **9/13/2011**   (2) at *(time)*: **3:45 PM**

   b. [ ] by substituted service. On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b)*:

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date)*: from *(city)*: or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007]       **PROOF OF SERVICE OF SUMMONS**       Code of Civil Procedure, § 417.10<br>POS010-1/LA109081335

| PETITIONER: PECK, ET AL. | CASE NUMBER: |
|---|---|
| RESPONDENT: NFL, ET AL. | LC094463 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*          (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☐ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☒ On behalf of *(specify):* **RBG HOLDING CORP.**
    under the following Code of Civil Procedure section:

| | | |
|---|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) | |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) | |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) | |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) | |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) | |
| | ☐ other: | |

7. **Person who served papers**
  a. Name: **Daniel Newcomb - Janney and Janney Attorney Service, Inc.**
  b. Address: **1545 Wilshire Blvd., #311  Los Angeles, CA 90017**
  c. Telephone number: **(213) 628-6338**
  d. The fee for service was: **$ 168.75**
  e. I am:

    (1) ☒ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ registered California process server:
      (i) ☐ owner    ☐ employee    ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: **9/14/2011**

**Janney and Janney Attorney Service, Inc.**
**1545 Wilshire Blvd., #311**
**Los Angeles, CA 90017**
**(213) 628-6338**

_____       _____
    **Daniel Newcomb**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)      (SIGNATURE)

Ex A_000099

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Gary A. Feess and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

## CV11- 8395 GAF (PJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

**[X] Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

**[ ] Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

**[ ] Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

DAVE PEAR, et al. (See attachment)

**DEFENDANTS**

NATIONAL FOOTBALL LEAGUE, et al. (See attachment)

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

(See attachment)

Attorneys (If Known)

(See attachment)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding ☑ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No ☑ **MONEY DEMANDED IN COMPLAINT:** $ $25,000+ (according to proof)

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.) (See attachment)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☑ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | |

**CV11-08395**

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08) **CIVIL COVER SHEET** Page 1 o

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): (Please see separately filed Notice of Related Cases regarding cases being removed concurrently with this case.)

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                              ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                              ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                              ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| (See attachment) | (See attachment) |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| (See attachment) | (See attachment) |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | (See attachment) |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _John M Vlun g_      Date _October 11, 2011_

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                 **CIVIL COVER SHEET**                 Page 2 o

*Attachment to Civil Cover Sheet for Pear, et al. v. National Football League, et al.*

*Section I*:

| PLAINTIFFS | DEFENDANTS |
|---|---|
| DAVE PEAR and HEIDI PEAR, his wife; LEONARD MARSHALL and MARYANN MARSHALL, his wife; BARRY FOSTER and TERAY FOSTER, his wife; ERIC W. MARTIN and STACY MARTIN, his wife; LANCE SMITH; HENRY LAWRENCE; ROBERT SUCI and MERITA SUCI, his wife; DEEMS MAY and SUSAN MAY, his wife; ZEFROSS MOSS; ANTONIO McGEE and SUE McGEE, his wife; JOHN L. OUTLAW and LINDA OUTLAW, his wife; BERNARD FORD; JAMES VANWAGNER and KELLEY VANWAGNER; BOBBY E. ABRAMS, JR., and STEPHANIE ABRAMS, his wife; JOHNNY REMBERT; FRANCISCO CRAIG and DENISE CRAIG, his wife; JAMES ELROD and MARLENE ELROD, his wife; FRED BARNETT and LINDSAY BARNETT, his wife; KEITH HENDERSON; JAMES PRUITT; WENDELL TYLER and CARMEN TYLER, his wife; HORACE COPELAND and TANGELA COPELAND, his wife; MICHAEL LUSH and DEBRA LUSH, his wife; MICHAEL GANN and KAREN GANN, his wife; TIMOTHY BARNETT and CHELONDA BARNETT, his wife; CALVIN WILLIAMS and CHARESE WILLIAMS, his wife; DAVID SIMS; FRED McCRAY and NERMA McCRAY, his wife; ANTHONY MARSHALL; LEE ROUSON and LISA ROUSON, his wife; DANNY MILLER and LISA MILLER, his wife; WADE KEY and CATHERINE KEY, his wife; TONY DORSETT and JANET DORSETT, his wife; EMANUEL MARTIN; DWIGHT HARRISON; HARRY CRUMP and ANDREA CRUMP, his wife; SANTANA DOTSON and MONIQUE DOTSON, his wife; STEFON ADAMS and PATRICE ADAMS, his wife; LORENZO HAMPTON and MARCIA HAMPTON, his wife; LORENZO DAVIS; EMANUEL KING | NATIONAL FOOTBALL LEAGUE; NFL PROPERTIES LLC; RIDDELL, INC. d/b/a RIDDELL SPORTS GROUP, INC.; ALL AMERICAN SPORTS CORPORATION, d/b/a RIDDELL/ALL AMERICAN; RIDDELL SPORTS GROUP, INC.; EASTON-BELL SPORTS, INC.; EASTON-BELL SPORTS, LLC; EB SPORTS CORP.; and RBG HOLDINGS CORP. |

| and KENDRA KING, his wife; WILLIE RICHARDSON and EARLINE RICHARDSON, his wife; MARC BOUTTE and TANANJALYN, his wife; REGGIE MOORE; LIONAL DALTON; BRODERICK THOMAS and YVONNE THOMAS, his wife; MARTY CARTER | |
|---|---|
| *Attorneys for Plaintiffs:* | *Attorneys for Defendants National Football League and NFL Properties LLC:* |
| GIRARDI I KEESE<br>THOMAS V. GIRARDI<br>1126 Wilshire Boulevard<br>Los Angeles, CA 90017<br>Telephone:  (213) 977-0211<br>Facsimile:  (213) 481-1554<br><br>RUSSOMANNO & BORRELLO, P.A.<br>HERMAN RUSSOMANNO<br>ROBERT BORRELLO<br>150 West Flagler Street - PH 2800<br>Miami, FL 33130<br>Telephone:  (305) 373-2101<br>Facsimile:  (305) 373-2103<br><br>GOLDBERG, PERSKY & WHITE, P.C.<br>JASON E. LUCKASEVIC<br>1030 Fifth Avenue<br>Pittsburgh, PA 15219<br>Telephone:  (412) 471-3980<br>Facsimile:  (412) 471-8308 | MUNGER, TOLLES & OLSON LLP<br>RONALD L. OLSON<br>JOHN M. RAPPAPORT<br>355 South Grand Avenue, Thirty-Fifth Floor<br>Los Angeles, CA 90071-1560<br>Telephone:  (213) 683-9100<br>Facsimile:  (213) 687-3702<br><br>*(Pro Hac Vice applications to be filed)*<br>PAUL, WEISS, RIFKIND, WHARTON &<br>  GARRISON LLP<br>BRAD S. KARP<br>THEODORE V. WELLS, JR.<br>LYNN B. BAYARD<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>Telephone:  (212) 373-3000<br>Facsimile:  (212) 757-3990 |

<u>Section VI</u>:

United States Civil Statute:  Labor Management Relations Act, 29 U.S.C. § 141, *et seq.*;  suit for negligence, "negligence-monopolist," fraud and loss of consortium against the National Football League and NFL Properties LLC, arising from and/or substantially dependent on collective bargaining agreements.

<u>Section IX</u>:

| a.  **Plaintiffs:** | | |
|---|---|---|
| *California Counties:* | *States other than California* | |
| Los Angeles<br>Riverside | Alabama<br>Florida | North Carolina<br>Oklahoma |

15367576.2

| | Georgia | Oregon |
| | Maryland | Pennsylvania |
| | Michigan | Rhode Island |
| | Mississippi | Texas |
| | Missouri | Washington |
| | New Jersey | |

## b. Defendants:

Plaintiffs allege that Defendants reside as follows:

National Football League is an unincorporated association with its headquarters located in the State of New York. The National Football League regularly conducts business in California.

NFL Properties, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its headquarters in the State of New York. NFL Properties, LLC regularly conducts business in California.

Riddell, Inc. (*d/b/a* Riddell Sports Group, Inc.) is a corporation organized and existing under the laws of the State of Illinois. Riddell, Inc. regularly conducts business in California.

All American Sports Corporation, d/b/a Riddell/All American, is a corporation organized and existing under the laws of the State of Delaware. All American Sports Corporation regularly conducts business in California.

Riddell Sports Group, Inc. is a Delaware corporation with its principal place of business in Texas. Riddell Sports Group, Inc. regularly conducts business in California.

Easton-Bell Sports, Inc. is a California corporation, incorporated in Delaware with a principal place of business in California.

Easton-Bell Sports, LLC is incorporated in Delaware, with a principal place of business in New York. Easton-Bell Sports, LLC regularly conducts business in California.

EB Sports Corp. is a Delaware corporation with its principal place of business in California.

RBG Holdings Corp. is a Delaware corporation with its principal place of business in California.

## c. Claims

On information and belief, as of this time, and based on the allegations set forth in the Complaint, all of the claims against the National Football League and NFL Properties LLC arose in New York, and possibly other states.